725 So.2d 171 (1998)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Howard Junior "Buster" SPENCER.
No. 97-CC-01579-SCT.
Supreme Court of Mississippi.
September 17, 1998.
Rehearing Denied November 12, 1998.
*173 Luther T. Brantley, III, Irene Mikell Buckley, Jackson, Attorneys for Appellant.
Danny L. Lowrey, Corinth, Attorney for Appellee.
EN BANC.
SULLIVAN, Presiding Justice, for the Court:
¶ 1. Howard Junior "Buster" Spencer is a Justice Court Judge for the Southern District of Prentiss County. After receiving numerous complaints against Spencer, the Commission on Judicial Performance found probable cause to institute a formal complaint of judicial misconduct.
¶ 2. A formal hearing was held on May 12-16, 1997, and May 22-23, 1997, before a duly appointed committee of the Commission on Judicial Performance. On October 31, 1997, the Committee filed its Findings of Fact and Recommendations, recommending that Spencer be removed from office and that he be suspended from office until conclusion of the matter. The seven members of the Commission met on December 12, 1997, and voted unanimously to accept and adopt the Committee's findings and recommendations.
¶ 3. On December 18, 1997, the Commission filed a Petition for Interim Suspension of Justice Court Judge Howard Junior "Buster" Spencer. This petition for interim suspension was granted by this Court on March 12, 1998, effective immediately. In addition to the recommendation of interim suspension, the Commission on Judicial Performance recommends permanent removal from judicial office and the assessment of costs totaling $9,454.92 to Spencer. We agree with this recommendation.

FACTUAL BACKGROUND
¶ 4. Spencer was elected to the office of justice court judge of Prentiss County in 1995, and assumed judicial office in January of 1996. Shortly after Spencer assumed office *174 the Commission began receiving citizen complaints on Spencer's behavior and conduct in office, as well as complaints from elected and appointed officials of Prentiss County, Mississippi. The amended complaint against Spencer consisted of 34 counts of alleged misconduct. Spencer's defense primarily rested on the allegation that there was a conspiracy against him to have him removed from office, and that this alleged conspiracy was spearheaded by Patilda Maness, the justice court clerk for Prentiss County in 1995 and 1996. The Commission discredited this conspiracy theory, although it did recognize personal hostility between Judge Spencer and Clerk Maness. The Commission found clear and convincing evidence to substantiate 25 counts of personal and professional misconduct.
¶ 5. The Commission found by clear and convincing evidence that Spencer's conduct violates Canons 1, 2A, 2B, 3A(1), 3A(2), 3A(3), 3A(4), 3A(5), 3B(1), 3C(1), and 5C(1) of the Code of Judicial Conduct of Mississippi Judges. Further, the Commission found the conduct exhibited by Spencer violates Section 177A of the Mississippi Constitution, and said conduct constitutes willful misconduct in office, willful and persistent failure to perform the duties of his office, and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

LEGAL ANALYSIS
¶ 6. The appropriate standard of review applied to this case is as follows:
This Court conducts a de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Judicial Performance Commission. Although this Court considers the recommendations of the Commission, we are in no way bound by them and may also impose additional sanction.
Mississippi Comm'n on Judicial Performance v. Russell, 691 So.2d 929, 935 (Miss. 1997) (internal citations omitted) (quoting Mississippi Comm'n on Judicial Performance v. Milling, 651 So.2d 531, 535 (Miss. 1995)). One important rule this Court has repeatedly applied is that the Commission recommendations are just that, recommendations, with no binding effect and that this Court conducts a de novo review and is the final arbiter of Commission cases and must "render independent judgment." Mississippi Judicial Performance Comm'n v. Peyton, 555 So.2d 1036, 1038 (Miss.1990); In re Collins, 524 So.2d 553, 556 (Miss.1987); In re Garner, 466 So.2d 884, 885-86 (Miss.1985).

I. Did the Commission violate the Due Process Rights of the respondent protected by the Fourteenth Amendment to the United States Constitution and Article 3 Section 14 of the Mississippi Constitution of 1890?
¶ 7. Spencer's argument that his due process rights were violated contains two principle arguments. First he argues that the procedures and investigation of this matter were in violation of its own rules, including the allegation of ex parte communications by the members of the Commission and the failure to grant his request to appear before the full Commission prior to making its findings of fact and recommendations to this Court. Second, he argues that both Article Six, Section 177A of the Mississippi Constitution of 1890 and the Code of Judicial Conduct are unconstitutionally vague.

A. Procedures of the Commission
¶ 8. The first argument in part was recently addressed in Mississippi Commission on Judicial Performance v. Russell when this Court found that the composition of the Commission is not unconstitutional. Russell, 691 So.2d at 945-47. This Court further found that the combination of investigative, prosecutorial and adjudicative functions in the Commission does not violate due process. Id. at 945-47. At the beginning of the hearing before a three member panel of the Commission, attorney Lowrey moved to have all three members recuse themselves, in particular Judge Lowrey, the presiding judge, based on alleged improper ex parte communications. This motion was overruled based on how the Commission is set up and the multiple roles assigned to the Commission. This argument goes directly to the multiple roles of the Commission as investigator *175 and prosecutor. As stated in Russell, "[t]he processes of the Commission do not in and of themselves appear to present an unacceptable risk of bias." Id. at 946. This Court finds, as in the Russell case, that based on these allegations Judge Spencer "has not demonstrated that bias in fact permeates the process." Russell, 691 So.2d at 946.
¶ 9. Spencer next contends that the Commission violated Rule 5B, 5C and 8E of the Rules of the Mississippi Commission on Judicial Performance. Spencer relies on two newspaper clippings in the local Prentiss County Newspaper to support his contention that the Commission breached the confidentiality requirement of Rule 5B. This is without merit. Although there was an article pertaining to the alleged charges dated December 19, 1996, and another article about the closed hearing near the time of trial, there is no indication that the Commission was in any way responsible for this disclosure.
¶ 10. Spencer also takes issue with the fact that he was not given the required ninety day notice in Rule 5C that shall be given to the judge if the initial complaint is not dismissed by the Commission. Spencer contends that the 96-091 complaint by Pamela Hodum was filed more than ninety days prior to any notification to Spencer. Rule 5C of the Rules of the Mississippi Commission on Judicial Performance states, "Failure to make timely notification shall not be grounds for dismissal of any investigation or proceeding."
¶ 11. Spencer further argues that the Findings of Fact and Conclusions of Law are not timely filed pursuant to Rule 8E of the Rules of the Commission. Therefore he moves to have this Court strike the Finding of Facts and Conclusions of Law. Rule 8E requires the Commission to file its findings within thirty (30) days after the hearing is concluded unless the Commission grants additional time. The record reflects that an order was signed on July 24, 1997, ordering both the Commission and the respondent to file their proposed findings of fact and memorandum of law simultaneously forty five (45) days after a copy of the transcript is received by each counsel. In addition, on September 18, 1997, attorney Lowrey filed a motion for additional fifteen (15) days to complete findings of fact and conclusions of law. Given these facts, we find that although the technical requirement of Rule 8E may not have been followed, given the voluminous record in this case, the length of the hearing, the number of witnesses who testified, and the fact that Spencer's attorney also requested additional time even after the Commission had set a deadline for submission, this argument fails.
¶ 12. The next argument Spencer raises is that he was denied due process because his motion to appear in person before the full Commission prior to its making its findings was denied. He argues that he was denied the right to appear when the Commission considered the recommendation of the three judge panel. This argument is without merit. Rule 8C of the Rules of the Commission, as adopted and approved by this Court, provides: "The formal hearing shall be conducted before the entire Commission, or before a committee of the Commission, a master or a factfinder designated by the Commission." Spencer's inquiry was heard by a three member committee of the Commission, duly designated and appointed in accordance with this rule. Consequently, Spencer was not denied due process when he was afforded a seven day hearing before a duly appointed committee where he could present witnesses and advance his defense in response to all allegations the Commission had filed against him.

B. Constitutionality of § 177A of the Mississippi Constitution and the Canons listed in the Code of Judicial Conduct
¶ 13. Another challenge Spencer makes addresses the constitutionality of § 177A of the Mississippi Constitution and his contention that the language is unconstitutionally vague. This Court has already addressed this contention and held that the language of § 177A of the Mississippi Constitution is not unconstitutionally vague. Russell, 691 So.2d at 941-42. In Russell, this Court stated, "The language of § 177A and the interpretations of that language by this Court are sufficient *176 to put men of common intelligence on notice of what type of conduct is prohibited." Id. at 942. This argument has been decided and is without merit.
¶ 14. Spencer also contends that the Canons of Judicial Conduct are unconstitutionally vague. In particular he challenges Canon 1, 2A, 2B, and 3B as being unconstitutionally vague in violation of his right to due process. However, Spencer cites no authority for the assertion that the Canons are unconstitutionally vague. After reviewing the language of these specific Canons as well as the interpretations of that language by this Court, see Mississippi Comm'n on Judicial Performance v. Sanders, 708 So.2d 866, 875-76 (Miss.1998) (presenting text of Canons 1, 2, 2A, 2B, 3A(1), 3A(4), 3B(1), 3C(1)(b) of the Code of Judicial Conduct with discussion and interpretation as it relates to facts); Mississippi Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 84 (Miss.1997) (interpreting Canons 1, 2, 2A, 2B, 3A(1), 3A(4) of the Code of Judicial Conduct), we find that the Canons are "sufficient to put men of common intelligence on notice of what type of conduct is prohibited." This issue is likewise without merit.
¶ 15. Spencer was not denied his right to due process. The procedures implemented by the Commission comport with notions of fundamental fairness, particularly when considering the multiple roles that the Mississippi Commission on Judicial Performance is required to fulfill.

II. Did the Conduct of the Respondent, Judge Howard Junior "Buster" Spencer, constitute willful misconduct in office, willful and persistent failure to perform the duties of office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution of 1890, as amended?
¶ 16. The Mississippi Commission on Judicial Performance found by clear and convincing evidence that Spencer violated Section 177A of the Mississippi Constitution of 1890. This Section provides in pertinent part:
On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: ... (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; ... (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute....
This Court has on several occasions used the same language to define willful misconduct:

Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Russell, 691 So.2d at 936-37 (quoting Milling, 651 So.2d at 538); see also Mississippi Comm'n on Judicial Performance v. Fletcher, 686 So.2d 1075, 1077 (Miss.1996).
¶ 17. Further, the Commission found by clear and convincing evidence that Spencer violated Canons 1, 2A, 2B, 3A, 3A(1), 3A(2), 3A(3), 3A(4), 3A(5), 3B(1), 3C(1), and 5C(1) of the Mississippi Code of Judicial Conduct. The headings of these specific canons are as follows:
Canon 1
A Judge Should Uphold the Integrity and Independence of the Judiciary
Canon 2

*177 A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
Canon 3
A Judge Should Perform the Duties of His Office Impartially and Diligently
Canon 5
A Judge Should Regulate His Extra-Judicial Activities to Minimize the Risk of Conflict With His Judicial Duties
¶ 18. The judicial misconduct the Commission found that Spencer had engaged in is varied and far reaching. Each of the twenty five counts fit into one of the following categories, (A) Ex Parte Communication, (B) Demeanor and Impartiality, (C) Failure to Perform Duties, and (D) Sexual Misconduct and Harassment. Each of these groupings directly relate to specific Canons of the Code of Judicial Conduct.

A. Ex Parte Communications
¶ 19. The evidence at trial substantiates the charges of ex parte communications. The first Count against Spencer is the fact that he issued a written order pursuant to Miss.Code Ann. § 9-11-27 (Supp.1997) that directed the justice court clerks to give his home telephone number to anyone who called him at work if he was not there and to have all his mail delivered to him unopened. According to Spencer's testimony he verbally rescinded this order but it has never been rescinded in writing and is therefore still effective. He also had his home number published in the local newspaper. These instances alone encourage ex parte communications in direct conflict with Canon 1, Canon 2, and Canon 3A(1).
¶ 20. Nine other counts against Spencer involve extensive ex parte communication between Spencer and litigants or potential litigants. In Counts 2, 3, 4, 5, 6, 8, 10, and 26 the testimony at the hearing substantiates the allegation that Spencer made offers or promises to assist or "help" litigants with their various charges and then failed to do so. Judge Spencer defends many of these contentions by arguing that he did not initiate the contacts, nor consider the communications. Furthermore he did not engage in ticket fixing and recused himself from these cases. Spencer misses the point of what is alleged. "`For a judge to merely listen to another person involved in pending litigation is a violation of Canon 3A(4).'" Russell, 691 So.2d at 941 (quoting Mississippi Com'n on Judicial Performance v. Chinn, 611 So.2d 849, 852 (Miss.1992)).
¶ 21. When considering the testimony of several witnesses who testified to their conversations with Spencer, it is apparent that an atmosphere of anger and hostility existed between these witnesses and Spencer when he failed to help them after he told them he would see what he could do to help them. It is also noteworthy that Spencer assisted his friends, the Stennents, Count 5, and the Jourdans, Count 10. As a result of ex parte communications with the Jourdans, Spencer dismissed an outstanding, unpaid ticket. His defense is that the ticket was issued in 1995, and he thought the Court had the inherent power to dismiss on its own motion when prosecution is barred by a constitutional defect. The Commission correctly points out that procedurally a hearing must be conducted unless there is a motion to dismiss by the prosecuting attorney. Mississippi Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993). The point here is that but for the ex parte communication, Spencer would not have even known about the older of the two tickets that Jourdan had received.
¶ 22. This Court has recognized the difficulty judges may have in avoiding ex parte communications. Mississippi Comm'n on Judicial Performance v. Chinn, 611 So.2d 849, 852 (Miss.1992). In that case we even suggested ways that justice court judges might alleviate these difficulties such as "using clerks to screen calls" or inquiring as to the nature of the calls. Id. at 852. One of the members of the Commission, C.E. Robertson, Justice Court Judge, wrote a special concurrence in this case to remind the Commission of the special circumstances that justice court judges often face regarding the problem with ex parte communications. However, even Robertson stated in regard to Spencer's conduct, "It is obvious that he often times appeared to enjoy and revel in ex parte conversations. This is wrong and this *178 Commission correctly recognizes that impropriety. Accordingly, I concur." "Engaging in ex parte communications [on repeated occasions does] amount to an attack on the integrity and independence of the judicial office." Mississippi Comm'n on Judicial Performance v. Vess, 692 So.2d 80, 84 (Miss. 1997). We find that Spencer's conduct of numerous ex parte communications violates Canons 1, 2A, 2B, 3A(1), 3A(2), 3A(3), and 3A(4), and constitutes willful misconduct in office prejudicial to the administration of justice.

B. Demeanor and Impartiality
¶ 23. The allegations in several counts as to Judge Spencer's demeanor inside and outside of court are very serious. The record reveals that numerous witnesses, including court staff, law enforcement officers, the county prosecutor, the other sitting justice court judge in Prentiss County and litigants before the judge in open court all testified to specific instances of Spencer's conduct that are improper, intolerable, and place the judicial office in disrepute. Although this opinion has already defined the term "willful misconduct," some misconduct is so egregious as to require no definition to identify it. "[T]his Court can generally recognize examples of such [willful] conduct when presented before the Court." In re Quick, 553 So.2d 522, 525 (Miss.1989) (citing In re Anderson, 412 So.2d 743, 752 (Miss. 1982) (Hawkins, J., specially concurring)). Elected members of the Judiciary have a duty to conduct themselves with respect for those they serve, including the court staff and the litigants that come before them.
¶ 24. Judge Spencer has demonstrated outrageous, erratic conduct and hostile demeanor toward those exposed to him. For example, Pamela Hodum testified that when she went to court to confront Spencer about him telling her that he would help her with her ticket, Spencer told her to be quiet or he would hold her in contempt, raising his voice to her in a hateful manner while striking his gavel. Randy Page testified that he went to court to see Spencer about paying a fine for his brother in law, and Spencer asked him, "What damn business is it of yours?" He stated that the judge had a really bad attitude. Olivia Brown, another litigant, testified that Spencer had called her on two separate occasions and cursed at her. She testified that he called her a "God-damn liar and he didn't know who I was and he didn't care who I was and that I would go to jail, pay my bond, and he would see my ass in court in front of him." Gordon Moore, another litigant, testified that Spencer acted like he was God and tried to embarrass and humiliate him in open court. Laura McElroy, county prosecutor, testified as to the snide comments that Spencer constantly made to her, Justice Court Clerk Maness, and Officer Corbin in open court, and also that he called her a liar in open court and told her she needed to resign as a county prosecutor. She also testified to a December contested court date where Spencer ate dum dum lollipops from the bench all day long. Judge Moore testified that she had to ask Spencer to leave her courtroom during a contested court date on September 11, 1996, because he caused a commotion in the courtroom and made a speech in open court about his conflict with Bailiff Moore. These examples are but a few of the numerous complaints against Spencer in regard to how he treats court personnel and litigants.
¶ 25. Throughout the hearing before the Commission Panel, Judge Spencer never accepted the slightest responsibility for any of his conduct, other than occasionally admitting to ex parte communications, admitting a few statements he made to the clerks, and admitting that he probably gave the newspaper the information about his home phone number. Otherwise, his responses to all allegations listed in the formal complaint were lack of memory, outright denial, or that the claims of misconduct were the result of a conspiracy to effectuate his removal from office.
¶ 26. According to Spencer, the plot was spearheaded by Maness, Prentiss County Justice Court Clerk, primarily because he rejected her sexual advances. The transcript of the hearing is replete with Spencer's allegations against Justice Clerk Maness. Spencer testified that he found a stick embedded with nails under his rear tire one morning. However, other clerk's office staff *179 members had nails in their tires also. He also testified that when he came back from a judicial school held in Biloxi he found his judicial robe sliced down the back. Throughout Spencer's brief to this Court he never admits to any wrongdoing, except for ex parte communication. Spencer accuses the Commission of exhibiting bias and prejudice in its findings of fact. He states, "It should be noted that in a swearing match the Commission takes the work of a convicted felon over a sworn officer of the Court." Spencer denies all allegations relating to the encounters he had with Page, Brown, Stacy, Hodum, Hurd, Officer Corbin, and Gordon Moore; but each testified that Spencer had either cursed them, used profanity, or humiliated them in Court. His explanation of their testimony is that each person making a complaint got mad at Judge Spencer, because they were asking him to do something the Commission and the Supreme Court have condemned. We find that this explanation lacks credibility. It is absurd to believe that these people all lied under oath and are out to get Spencer to advance a vendetta on behalf of Maness.
¶ 27. As this Court has explained:
There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office of the justice court judge. See In re Garner, 466 So.2d 884, 887 (Miss.1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges. If these judges do not behave with judicial temperament and perform their duties according to the law and by reference to the process of adjudication, there seems little hope that our citizenry at large may understand and respect the legal process.
In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989) (emphasis added). Other jurisdictions have addressed this type of behavior, albeit not as egregious or as frequent as this case, and held that a judge's intemperance with defendants, court personnel, and attorneys is conduct which prejudices the administration of justice and casts the judicial office into disrepute. Spruance v. Comm'n on Judicial Qualifications, 13 Cal.3d 778, 119 Cal.Rptr. 841, 532 P.2d 1209 (1975); In re Terry, 262 Ind. 667, 323 N.E.2d 192 (1975); In re Littell, 260 Ind. 187, 294 N.E.2d 126 (1973); In re Inquiry Concerning a Judge No. 481, 251 Ga. 524, 307 S.E.2d 505 (1983). See also Canons 1, 2A, 2B, 3A(1), 3A (2), 3A(3), 3A(4) of the Code of Judicial Conduct of Mississippi Judges. Furthermore, Rule 1.02 of the Uniform Rules of Procedure For Justice Court states:
The court shall be opened formally and conducted with dignity and decorum at all times. The judge shall wear a judicial robe at all times when presiding in open court. Each officer of the court shall be responsible for the promotion of respect for the court.
Judge Spencer's conduct as substantiated by the record is in direct violation of this rule. His conduct in the courtroom is undignified and fails to promote respect for the Justice Court of Prentiss County.
¶ 28. Judge Spencer's disrespect for people in his courtroom is directly adverse to Canon 3A(2), that "[a] judge should maintain order and decorum in proceedings before him", and Canon 3A(3), that "[a] judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity...." Judge Spencer's conduct is willful and brings the judicial office into disrepute in violation of Miss.Code Ann. § 177A.

C. Failure to Perform Duties
¶ 29. According to Canon 3B(1) of the Code of Judicial Conduct of Mississippi Judges, "A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials." Furthermore, Miss.Code Ann. § 9-11-11 (1991) states in relevant part, "Upon disposition, each record shall be signed by the justice court judge." Judge Spencer has failed to meet this requirement. At the time the complaint was filed Spencer had failed to dispose of 334 cases. The transcript of the hearing reveals *180 that Spencer's attorney checked out these files one week prior to the hearing before the Commission and Spencer signed those records so that the cases could be closed. According to Justice Clerk Maness there were still approximately seven hundred cases awaiting final disposition by Spencer at the time of the hearing. One week prior to the hearing, Spencer acted on some twenty affidavits which had been assigned to him since May 16, 1996.
¶ 30. Judge Spencer admitted to recusing himself from forty four cases that were assigned to him. When questioned regarding his reasons for recusal, Spencer had no recollection as to the majority of the cases. The ones he could remember were mainly due to his own involvement in ex parte communications with the litigants. These recusals created additional hardship on Judge Moore and Prentiss County.
¶ 31. Spencer's only defense for failing to dispose of the 334 cases awaiting his signature and his failure to act upon affidavits is that he did not have access to the files, although he admitted he knew that the files needed to be signed. In his brief he explains that no prejudice resulted against Prentiss County, since Maness testified that all money had been received on the cases and deposited with the county, and all abstracts had been sent to the Department of Public Safety. This explanation misses the point. The alleged misconduct of Judge Spencer is his failure to fulfill his statutorily required duties, not the lack of prejudice to the county for his failure to do so. The Commission acknowledged that there does exist a personality problem between the judge and Clerk Maness. This is evident from the entire record. However the record reveals that in many instances Judge Spencer either created or exacerbated the conflict. Also the testimony of Deputy Clerk Collette James, Deputy Clerk Martha Young, and Justice Court Clerk Maness contradict Spencer's assertion that he was denied access to the court files. Each witness testified to the fact that Spencer had full access to the court files he needed to do his job.
¶ 32. In Mississippi Judicial Performance Commission v. Hopkins, 590 So.2d 857 (Miss.1991), this Court discussed a judge's failure to timely sign one court docket. Hopkins, 590 So.2d at 864. The Court held that the evidence was clear and convincing that the Judge did not fulfill his statutorily mandated requirement. Id. at 864. Judge Spencer, like Judge Hopkins, denies that he committed any wrongdoing. "He instead offers explanations and excuses for every act." Id. at 866. Spencer's conduct was in violation of Miss.Code Ann. § 9-11-11 (1991) and Canons 1, 2A, 2B, 3A(1), 3A(4), 3A(5), and 3B(1) of the Code of Judicial Conduct for Mississippi Judges. Spencer failed to promptly dispose of the court's business and discharge his administrative duties. He allowed his relationship with Maness to affect his duties. He engaged in ex parte communications which required his recusal in 44 cases within a short period of time. By clear and convincing evidence we find that Judge Spencer is in violation of § 177A of the Mississippi Constitution by his willful misconduct which has brought the judicial office into disrepute.

D. Sexual Harassment
¶ 33. The Commission cites several cases in other jurisdictions addressing the impropriety of a judge's conduct in relation to sexual harassment of members of the opposite sex. The Commission found that Judge Spencer's conduct was sexual, predatory, and inexcusable. This is an issue of first impression before this Court. The testimony involving this allegation must be viewed as a whole, for there is no one incident so egregious by itself to support this allegation by clear and convincing evidence. Spencer asserts and the record supports the assertion that Spencer never solicited sex, nor touched any of the court personnel in an offensive manner. Nevertheless, the testimony of Patilda Maness, Judge Debra Moore, Monica Harvey and Martha Young substantiates a number of improper comments that collectively demonstrate Judge Spencer's tendency to sexually harass the female court personnel with whom he worked. The testimony of each of these witnesses was credible and often mutually corroborative.
*181 ¶ 34. Judge Spencer admitted that he told Deputy Clerk Harvey that he had seen a pair of small red panties folded and shaped like a flower that he started to buy for her but he thought it might offend her. Harvey testified about the same incident and told Spencer that she was offended, after which he left the office. Another incident involved a "stress ball." Harvey testified that Spencer came over to her desk with the ball and asked her if she would like to squeeze his balls while looking down at his private area and laughing. This incident was also witnessed by Deputy Clerk Young who testified that the incident was disgusting and inappropriate. Spencer denied this incident but did admit that he may have had one in his pocket at the office and that he does sell the "stress balls" in his advertising business. Judge Moore testified as to a conversation she had with Judge Spencer where he was talking about his strong sexual desire. Spencer admitted to this conversation but stated that Judge Moore initiated it. Judge Moore denied that she initiated the conversation and testified that she believed Spencer tried to control her at work and at their seminars. Judge Moore further testified to several occasions where Spencer made unsolicited comments of a sexual nature which she found offensive. Martha Young testified to several incidents of offensive and inappropriate behavior by Spencer while at work. Once, Spencer interrupted a conversation between Young and Maness and offered to wash Young's blue jeans for her if she would "take them off right now." Both Young and Harvey testified that this remark was uninvited and offensive. Spencer denied making any such statement. Another such incident witnessed by Young, Maness, and Judge Moore involved Spencer making a crude comment about women's "vaginal odors." Spencer was unable to recall saying anything about "vaginal odors." Later in the hearing Spencer remembered the events leading up to this comment and remembered making a statement about women's odors but denied using the word vaginal.
¶ 35. Judge Spencer argues in his brief that the statements do not constitute sexual harassment. He explains that there was no threat to their job, Spencer was not their supervisor and there was no threat of reprisal. The Commission admits that it is not in a position to determine if Spencer's conduct would meet the legal definition of sexual harassment. However, that is not the issue before this Court today. Rather the issue is whether such a continuing pattern of offensive comments constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution of 1890.
¶ 36. The Commission cites to an Ohio case which involved unwarranted, unsolicited comments of a sexual nature made by an attorney. Office of Disciplinary Counsel v. Campbell, 68 Ohio St.3d 7, 623 N.E.2d 24 (1993). The Ohio Supreme Court stated in its per curiam opinion, "Such conduct [unsolicited comments] would be unacceptable by any member of society. We, however, find it particularly intolerable by an attorney and abhorrent for a member of the judiciary." Id., 623 N.E.2d at 27. "Respondents's defense that he intended no harm is contradicted by those instances in which his behavior continued despite objections from the victim[s] that his actions were unwelcome and offensive." Id. at 27. Likewise, in this case Spencer's comments continued even after the clerks told him they found his remarks offensive.
¶ 37. In a California case, the Supreme Court found that a judge's offensive remarks to female court reporters and clerks, including remarks concerning physical characteristics, intimate relationships, and "other offensive and crude remarks in the presence of court staff" was a proper basis standing alone for public censure. Fitch v. Commission on Judicial Performance, 9 Cal.4th 552, 37 Cal.Rptr.2d 581, 887 P.2d 937, 939-40 (1995). Fitch's defense, much like Spencer's defense, included that the witnesses either "(1) had motives to fabricate their testimony, (2) misinterpreted petitioner's innocent words or deeds, or (3) unduly delayed reporting their complaints about petitioner's conduct." Id., 887 P.2d at 939. Spencer alleges all three of these explanations in his brief. The California Supreme Court did not accept these reasons, and neither does this Court.
*182 ¶ 38. We find that the record supports the conclusion that Judge Spencer's offensive comments to members of the court staff constitutes gross personal conduct in violation of Canons 1, 2A, 2B, 3A(1), 3A(3) and 3B(1) of the Code of Judicial Conduct of Mississippi Judges. Furthermore, Spencer's conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 39. The totality of the testimony is overwhelming, and the widespread nature of the allegations against Judge Spencer discredit any assertion of a plot against him. There is no credible reason for so many individuals to be vindictive. In sum, considering the variety of allegations and an independent careful study of the entire record, we find that the allegations of ex parte communications, lack of demeanor, failure to perform duties, and sexual harassment are supported by clear and convincing evidence and constitute willful misconduct.

III. Should the Respondent, Judge Howard Junior "Buster" Spencer, be removed from judicial office and assessed the costs of this proceeding by the Mississippi Supreme Court, pursuant to Section 177A of the Mississippi Constitution of 1890, as amended?
¶ 40. The Commission unanimously recommended that Justice Court Judge Howard Junior "Buster" Spencer be removed from judicial office and assessed the costs of this proceeding totaling $9,452.92. While we will consider this recommendation, this Court has stated:
In judicial misconduct proceedings, this Court is the trier of fact, and it has sole power to impose sanctions. Garner, 466 So.2d at 885; Collins, 524 So.2d at 556. Although this Court has an obligation to conduct an independent inquiry, it nonetheless gives great weight to the finding of the Commission, which has had the opportunity to observe the demeanor of the witnesses. Garner, supra at 885; Collins, supra at 556. However, this Court is not bound by any recommendations of the Commission.
In re Quick, 553 So.2d 522, 527 (Miss.1989).
"`The imposition of sanctions is a matter left solely to the discretion of this Court.'" Russell, 691 So.2d at 942 (quoting Mississippi Judicial Performance Comm'n v. Walker, 565 So.2d 1117, 1124 (Miss.1990)). "`The sanction involved ought fit the offense.'" Russell, 691 So.2d at 942 (quoting Walker, 565 So.2d at 1124). There are four sanctions that this Court can render: (1) public censure or reprimand, (2) suspension from office, (3) fine and (4) removal from office. Miss. Const. art. 6, § 177A.
¶ 41. Spencer argues that removal is not warranted in this case based on mitigating factors. These include Spencer's desire to protect the constitutional rights of others, his service in the Shriners and Masons, his church attendance, the lack of any charge of dishonesty, the atmosphere in which he had to work, his refusal to fix tickets, his refusal to arbitrarily dismiss tickets, his attempts to follow the law by calling the Attorney General and the Judicial Performance Commission, his following the advice of Mr. Barnsley, and his enforcing an ethics violation against an attorney. He suggests that no more than a private reprimand is in order. We disagree.
¶ 42. Each judicial disciplinary case is unique. While other similar cases are helpful and instructive in determining the appropriate sanction, each case must ultimately be judged on its own merits. There is no question based on the testimony at the hearing and the letters written by many of the witnesses at trial addressed to the Commission that the Justice Court System in Prentiss County has been under a severe hardship, beginning shortly after Spencer took office. Even the Prentiss County Board of Supervisors sought the assistance of the Commission, claiming that the "Prentiss County Justice Court no longer works effectively." Judge Spencer tried to blame all of his actions on other people and never apologized for any of his conduct at any time during the lengthy hearing before the Commission.
¶ 43. The Commission cites to the Supreme Court of Georgia, and the language of that Court bears repeating. It states as follows:
Those who are called upon to live the life of a judge must act with dignity and respect *183 toward others, and must assume full responsibility for their actions. The judges who sit in our communities are entrusted with the duty to safeguard the fundamental rights of others. When, as here, it is established by clear and convincing evidence that an individual is not competent to sit as a judge because she has breached that sacred trust, the same great authority that established those fundamental rights commands us to protect the citizenry and the judicial system from harm, and remove that individual. There is no place in the judiciary for one who will not take equal pains with each and every case and litigant, no matter how small or humble, to ensure that they are guaranteed the same fundamental rights as the greatest and mightiest in our State.
In re Inquiry Concerning a Judge, 265 Ga.843, 462 S.E.2d 728, 736 (1995).
¶ 44. Removal is the only appropriate sanction given the facts of this case. Removal is the only way that the citizens of Prentiss County may eventually regain confidence in their Justice Court System. This Court has removed judges from office for far less egregious conduct than that exhibited in this case. Spencer has "demonstrated [a] pattern of repeated misconduct" which is most serious. In re Collins, 524 So.2d 553, 557 (Miss. 1987). Spencer has violated most every Canon, and we will not tolerate such flagrant disregard for the rules that every judge is bound to follow. Therefore, the recommendation of the Commission on Judicial Performance is accepted.
¶ 45. This opinion constitutes formal and official notice of the removal of Howard Junior "Buster" Spencer, from the office of Prentiss County Justice Court Judge, Southern District, as per the terms contained herein.
¶ 46. The Clerk of this Court shall forward attested copies of this opinion to the Secretary of State and State Auditor of Mississippi, as well as to the clerks of the Prentiss County Justice, Chancery, and Circuit Courts and to the Prentiss County Board of Supervisors.
¶ 47. JUDGE HOWARD JUNIOR "BUSTER" SPENCER IS HEREBY REMOVED FROM THE OFFICE OF JUSTICE COURT JUDGE FOR THE SOUTHERN DISTRICT OF PRENTISS COUNTY, MISSISSIPPI AND IS ASSESSED WITH ALL COSTS IN THE AMOUNT OF $9,452.92, FOR WHICH LET EXECUTION ISSUE.
PRATHER, C.J., PITTMAN, P.J., BANKS, JAMES L. ROBERTS, Jr., SMITH, MILLS AND WALLER, JJ., CONCUR.
McRAE, J., NOT PARTICIPATING.