692 So.2d 80 (1997)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Charles L. VESS.
No. 96-CC-01098-SCT.
Supreme Court of Mississippi.
April 17, 1997.
*81 Luther T. Brantley, III, Jackson, for petitioner.
Joseph S. Zuccaro, Natchez, Philip E. Carby, Brown & Carby, Natchez, for respondent.
En Banc.
SULLIVAN, Presiding Justice, for the Court:
On October 23, 1995, a complaint was filed with the Mississippi Commission on Judicial Performance (the Commission) concerning Charles L. Vess, Justice Court Judge, Southern District, Adams County, Mississippi. The Commission filed its formal complaint against Judge Vess on January 2, 1996. The complaint charged the judge with "judicial misconduct constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute." These charges arose out of Judge Vess's conduct in the criminal proceedings against Vondelyn Allen. The Commission alleged that Judge Vess engaged in ex parte communications with Ms. Allen and her family, the arresting officer, and prosecutor in Ms. Allen's case. Judge Vess was also charged with interfering with Ms. Allen's right to post bond. The complaint maintained that Judge Vess's conduct violated Canons 1, 2A, 2B, 3A(1), 3A(4) and 3C(1) of the Code of Judicial Conduct.
John C. Love, Jr., Chairman of the Commission, appointed a committee to conduct a formal hearing regarding the complaint. Judge Vess filed his response to the complaint, along with affidavits in support thereof, on April 3, 1996. A two-member tribunal[1] conducted a hearing on the complaint in the Adams County Courthouse in Natchez, Mississippi on June 20, 1996. On August 30, 1996, the tribunal filed its findings and recommendations, in which they determined that the complaint was well founded and recommended that Judge Vess be subjected to a public reprimand and taxed with all costs of the action. The Commission voted to adopt the tribunal's findings and recommendations on September 13, 1996. The Commission filed its findings of fact and recommendations with this Court on October 14, 1996, and the inquiry costs were calculated to be $1,173.45. The Commission and Judge Vess filed a joint motion for approval of the Commission's recommendations with this Court on November 15, 1996.

FACTS
Judge Charles L. Vess was first elected Justice Court Judge for the Southern District of Adams County, Mississippi in 1991. In the course of his duties as a judge, he first encountered Vondelyn Allen in January of 1995, when she appeared before him on a felony charge of uttering a forged instrument. Ms. Allen agreed to a plea bargain, the charge was reduced to misdemeanor false pretenses, and Ms. Allen was sentenced to two years probation. Sometime after the *82 conclusion of these proceedings, Ms. Allen's mother, Carolyn Kirksey, spoke with Judge Vess, who reassured her that Ms. Allen had fully cooperated and paid her fine, and that everything was taken care of.
On June 12, 1995, Deputy Sheriff Dale Cowan of the narcotics division arrested Ms. Allen on charges of possession of ecstasy and possession of crystal meth. Judge Vess signed the warrant on those charges that night at the sheriff's department after discussing the case with Mr. Cowan. He then went to the jail to verify that Ms. Allen was the same person he'd put on probation in January, and briefly spoke to her. Ms. Allen testified that the judge asked her if she had a drug problem, and that she told him she did. Judge Vess set temporary bond at $2,500.00 per count, and Judge Barber arraigned her the next day, setting bail at $5,000.00. Ms. Allen made bail on the drug charges in the county, but she was held over in the city jail for probation revocation.
On either June 12 or June 13, Ms. Kirksey called Judge Vess, because she had heard that Ms. Allen was going to post bail. Ms. Kirksey feared that Ms. Allen's boyfriend was going to pick her up from jail, and she wanted Judge Vess to stop him, because Ms. Kirksey felt that the boyfriend had a bad influence on Ms. Allen. Judge Vess went to the city jail and passed the bail bondsman and Ms. Allen's boyfriend, who told the judge that he was Ms. Allen's brother. The judge spoke with Ms. Allen and confirmed that it was her boyfriend trying to bail her out. Judge Vess then informed the shift commander that the boyfriend was posing as Ms. Allen's brother. The officer checked the boyfriend's identification and his record and discovered that he had "a pretty serious criminal history." Judge Vess and the officer approached the boyfriend, and Judge Vess told the boyfriend in front of the bail bondsman that he shouldn't be trying to bail Ms. Allen out of jail by posing as someone else. Ms. Allen was, as a result, unable to post bail. At the hearing, Judge Vess admitted that he had no authority to interfere.
On June 16, Judge Vess filed a mittimus for probation revocation against Ms. Allen and conducted a hearing on the matter. Ms. Allen had no attorney present, and the arresting officer did not testify. Judge Vess testified that he based his ruling on the warrant, the information he received from the arresting officer when he signed the warrant, and his conferences with the county attorney and Ms. Allen's parents. The judge sentenced Ms. Allen to ninety days in jail subject to weekly review.
During Ms. Allen's incarceration, her mother again called Judge Vess, because she was concerned about Ms. Allen having a kidney problem and not receiving any medical treatment in jail. Judge Vess went to the jail to check on Ms. Allen and took her a book and a candy bar. Judge Vess had started a public library for the prisoners, and Johnette Cupit, a detention officer at the Natchez Police Department, testified that it was not unusual for Judge Vess to bring a book to a prisoner. She also testified that to her knowledge this was the first time that Judge Vess had brought a specific book to a prisoner, but that he had previously brought prisoners cigars or cigarettes. It was not unusual for the judge to check on a detainee's medical status after receiving a phone call from a family member. Ms. Cupit did not think that Judge Vess gave Ms. Allen any special treatment.
During Ms. Allen's time in jail, her mother met with Mr. Cowan, the deputy sheriff who arrested her. Ms. Kirksey testified that Judge Vess did not arrange the meeting, but Mr. Cowan maintained that Judge Vess called him to set up a meeting between Mr. Cowan and Ms. Kirksey and her husband. Mr. Cowan also testified that Judge Vess spoke with him about the possibility of Ms. Allen working for the sheriff's department to get the drug charges reduced.
On July 11, Judge Vess ordered Ms. Allen's release from jail after a weekly review of the probation revocation. Ms. Allen's preliminary hearing on the drug charges was postponed while she was in drug rehabilitation. The preliminary hearing was held on September 7. Barret Martin, the county prosecutor, testified that he and Ms. Allen's attorney, David Hall, discussed the case and agreed that it would be best to retire the case to the file. Deputy Sheriff Cowan testified *83 that Mr. Martin approached him about retiring the case to the file. He stated that Mr. Martin told him that Judge Vess wanted the case to be retired and that they should "help Judge Vess out on this." Judge Vess testified that he assumed Mr. Martin and Mr. Hall had made a prior agreement, because Mr. Martin approached the judge about retiring the case. Mr. Martin maintained that the only contact that he and Judge Vess had regarding Ms. Allen's case was in the presence of defense counsel. Mr. Martin made the motion at the preliminary hearing that Ms. Allen's case be retired to the file, and Judge Vess granted it with the understanding that Ms. Allen would continue rehabilitation and update Judge Vess on her progress. Judge Vess received one letter from Ms. Allen in which she thanked him and let him know that she was doing fine, but the judge did not contact her again.
At the Commission hearing, Judge Vess admitted that in hindsight he should have recused himself from Ms. Allen's case after he signed the warrant. Initially Judge Vess thought that his conduct did not constitute ex parte communications, because he believed that it was not improper to talk with parties in a case so long as they did not discuss the facts or the "meat of the case." However, during the hearing, the judge testified that he now realized that his contacts with Ms. Allen were improper but that he had no malicious intent or intent to discredit his office. The judge also admitted that such communications at least gave an appearance of impropriety, and he stated at the end of his testimony that he now understood that ex parte communications are not limited to discussing the facts of a case. Mitigating evidence was presented on behalf of Judge Vess showing that he was enthusiastic and innovative in his work and had initiated new programs and improvements with the justice court.

STATEMENT OF THE LAW

Standard of Review
This Court conducts de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Judicial Performance Commission... . Although this Court considers the recommendations of the Commission, we are in no way bound by them and may also impose additional sanctions.
Mississippi Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss. 1993) (citations omitted).
Article 6, Section 177A of the Constitution of the State of Mississippi reads in part, "On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: ... (b) willful misconduct in office; ... or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute."
Wilful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith... . Wilful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Mississippi Comm'n on Judicial Performance v. Haltom, 681 So.2d 1332, 1334-35 (Miss. 1996) (quoting Mississippi Comm'n on Judicial Performance v. Ishee, 627 So.2d 283, 289 (Miss. 1993)) (quoting In re Quick, 553 So.2d 522, 524 (Miss. 1989)) (quoting In re Anderson, 412 So.2d 743, 745 (Miss. 1982)) *84 (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)).
The evidence presented to the Commission at the June 20 hearing clearly showed that Judge Vess engaged in ex parte communications with Ms. Allen, Ms. Kirksey (her mother), Mr. Cowan (the arresting officer), and Mr. Martin (the prosecuting attorney) regarding the criminal charges against Ms. Allen. Judge Vess himself acknowledged in his testimony that he had engaged in improper contacts, but assured the Commission that he was unaware at the time that his behavior constituted misconduct. The judge also recognized that he should no longer hear a case in which he signed the warrant. Judge Vess admitted that he had erred by interfering with Ms. Allen's right to post bond by preventing her boyfriend from bailing her out of jail. Judge Vess expressed regret for his behavior and promised that in the future he would be more careful about ex parte communications.
The Commission had clear and convincing evidence before it to conclude that Judge Vess did not act improperly through bad faith, but instead acted negligently in a manner that constituted willful misconduct. Judge Vess should have known that his communications with Ms. Allen, her mother, the arresting officer, and prosecuting attorney, and his interference with Ms. Allen's bonding process went beyond the limits of his authority as a justice court judge. Under the definition adopted by this Court in In re Anderson et seq., supra, Judge Vess's conduct in the criminal proceedings against Vondelyn Allen amounted to willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
The Commission was also correct in concluding that Judge Vess's conduct constituted violations of Canons 1, 2A, 2B, 3A(1), 3A(4), and 3C(1) of the Code of Judicial Conduct. Canon 1 requires that a judge strive to uphold the integrity and independence of the judiciary. Engaging in ex parte communications and interfering with a defendant's right to post bail certainly amount to an attack on the integrity and independence of the judicial office.
Canon 2 imposes upon judges the duty to avoid impropriety or the appearance of impropriety. Judge Vess himself admitted that his contacts with Ms. Allen gave at least the appearance of impropriety. Canon 2A further mandates that a judge promote "public confidence in the integrity and impartiality of the judiciary," and Canon 2B emphasizes the importance of maintaining impartiality and avoiding the impression that any person holds special influence over a judge. By giving special treatment to Ms. Allen, Judge Vess did not maintain impartiality in the exercise of his duties as a judge, and could easily have given the impression that his judgment was influenced by some special concern for Ms. Allen. Ms. Allen and Ms. Kirksey both testified that they thanked the judge for his help in handling Ms. Allen's case, suggesting that they believed that he specially intervened on Ms. Allen's behalf.
Canon 3A(1) requires a judge to avoid outside influences and maintain his competence in the law so as to faithfully apply it. Canon 3A(4) bars participation by judges in ex parte communications or consideration of such communications in a proceeding. Judge Vess's misconduct was primarily the result of his ignorance of the law governing ex parte communications. He admitted that he had never heard that a judge should not hear a case in which he signed the defendant's warrant. These failures to maintain his competence in the law and his participation in ex parte communications constituted violations of Canons 3A(1) and 3A(4). Similarly, Judge Vess violated Canon 3C(1) by failing to disqualify himself in Ms. Allen's case due to his impartiality caused by his previous contact with Ms. Allen and his special knowledge of her case from signing the warrant.
"[This Court has] recognized that when dealing with judicial misconduct, the sanction or sanctions should fit the offense and be consistent with that imposed in similar cases." Mississippi Comm'n on Judicial Performance v. Whitten, 687 So.2d 744 (Miss. 1997) (citing Mississippi Comm'n on Judicial Performance v. Chinn, 611 So.2d 849, 856 (Miss. 1992); In re Bailey, 541 So.2d 1036, 1039 (Miss. 1989)). In Mississippi *85 Comm'n on Judicial Performance v. Bowen, 662 So.2d 551 (Miss. 1995), this Court determined that the Commission's recommendation of a public reprimand and $1,450.00 fine were appropriate for a justice court judge's dismissal of speeding and traffic tickets following ex parte communications with the defendants. The Commission's recommendation of a public reprimand and $250.00 fine were upheld by this Court in Mississippi Comm'n on Judicial Performance v. Underwood, 644 So.2d 458 (Miss. 1994), where a justice court judge was influenced by ex parte communications to alter a final judgment. In Mississippi Comm'n on Judicial Performance v. Gunn, 614 So.2d 387 (Miss. 1993), this Court again agreed with the Commission's recommendation of a public reprimand and fine of $400.00, because the justice court judge was involved in ticket fixing and ex parte communications with a traffic violator. Judge Vess's case is similar in nature to these three cases, so we accordingly adopt the Commission's recommendation that Judge Vess be subjected to a public reprimand and taxed with the $1,173.45 cost of the action.

CONCLUSION
Judge Vess did not act with any ill intent and did not knowingly participate in judicial misconduct. However, he did negligently engage in ex parte communications and interference with Ms. Allen's right to post bail. The Commission properly found that Judge Vess violated Canons 1, 2A, 2B, 3A(1), 3A(4), and 3C(1) of the Code of Judicial Conduct. Based upon their correct determination that the judge exercised willful misconduct in office, and in light of this Court's rulings in similar cases, the Commission was justified in recommending that Judge Vess be subjected to a public reprimand and taxed with costs. It is undisputed that Judge Vess and the Commission agree with this proposal, and we hereby grant the joint motion.
JOINT MOTION FOR APPROVAL OF RECOMMENDATIONS FILED BY MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE GRANTED. JUDGE CHARLES L. VESS TO BE PUBLICITY REPRIMANDED AND TAXED WITH COSTS.
PRATHER, P.J., PITTMAN, BANKS, JAMES L. ROBERTS, Jr., SMITH and MILLS, JJ., concur.
DAN LEE, C.J., concurs in result only.
McRAE, J., not participating.
NOTES
[1] Both parties agreed to waive the third panel member.