EN BANC.
WALLER, Justice,
for the Court:

STATEMENT OF THE CASE

¶ 1. The Mississippi Commission on Judicial Performance filed a formal complaint against Justice Court Judge R.R. on January 14, 1997, charging him with judicial misconduct-in office and conduct prejudicial to the administration of justice which brings the office into disrepute.
¶ 2. A hearing was held on October 17, 1997. A commission committee found by clear and convincing evidence Judge R.R.’s conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute. Judge R.R. filed objections to the committee’s findings. The full commission accepted the recommendation of the committee and voted unanimously that the committee’s findings of fact and conclusions of law be accepted and Judge R.R. should be publicly reprimanded for his actions and taxed with all costs. *225 Judge R.R. lists the following assignments of error:
I. THERE IS NOT CLEAR AND CONVINCING EVIDENCE THAT JUDGE R.R. VIOLATED CANONS 1, 2A, 2B, 3AQ), AND 3A(3) OF THE CODE OF JUDICIAL CONDUCT OF MISSISSIPPI JUDGES, OR SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED
II. THE COMMISSION DID NOT ALLOW WITNESSES TO BE EXAMINED CONCERNING MITIGATING FACTORS THE COMMISSION AND COURT MUST CONSIDER, AND DID NOT ALLOW CHARACTER WITNESSES TO TESTIFY
III. THE COMMISSION USED OTHER ABUSIVE AND OVERLY AGGRESSIVE TACTICS AND DID NOT FOLLOW ITS RULES

FACTS OF THE CASE

¶ 3. The Mississippi Commission on Judicial Performance filed a formal complaint against Justice Court Judge R.R. on January 14, 1997, charging him with willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute. The charge arose from a complaint filed by C.C., a deputy clerk in the Justice Court. A hearing was held before a three member panel on October 17,1997.
¶ 4. Count I alleged Judge R.R. committed sexual harassment against C.C.. Count II alleged inappropriate comments toward a member of the public, but was dismissed upon motion of the Commission. Count III alleged the conduct in Counts I & II constituted willful misconduct in office and conduct prejudicial to the administration of justice.
¶ 5. C.C.’s complaints seem to be grounded in four areas: Judge R.R.’s touching her shoulder; telling her about a sexual dream; conversations in the justice court office about a pornographic video store in a nearby town; and comments about C.C.’s “checking out” the men in the office and “checking out” Judge R.R.. At the hearing, C.C. was not able to pinpoint the exact dates for any of the incidents though she repeatedly sought to associate the incidents as having taken place during a “fifth week” when no court was held.
A.Touching Incidents
¶ 6. C.C. alleged Judge R.R. touched her on her shoulders several times in spite of being told by both C.C. and deputy clerk B.B. that C.C. did not like to be touched.
¶ 7. Judge R.R. testified he touched C.C. at least once, possibly more, on the shoulder to get her attention and he probably touched other people in the office the same way for the same reason. He was unsure of the date of the touching and denied that either C.C. or deputy clerk B.B. ever told him C.C. did not like to be touched.
¶ 8. Deputy clerk B.B., however, testified C.C. told her she did not like to be touched. When she saw Judge R.R. touch C.C. on the shoulder to get her attention, B.B. told him in a light manner that C.C. did not like to be touched. Later she saw Judge R.R. touch C.C. on the shoulder again and then said, “Judge R.R., am I going to have to hit you with a brick? C.C. don’t like to be touched.” After this exchange, B.B. said she never saw Judge R.R. touch C.C. again. She added that she had never seen Judge R.R. touch anyone else in the office and that she herself had never been touched by him.
B. Dream Incident
¶ 9. Judge R.R. was alleged to have told C.C. about a sexual dream. According to C.C., Judge R.R. started talking about a dream, saying “You wouldn’t believe who I dreamed about ... You wouldn’t believe some of the things she did to me.” This and other similar comments led C.C. to believe the dream was sexual in nature and she did not respond.
*226 ¶ 10. Judge R.R. denied he had discussed a dream with C.C.. He admitted, however, he did come to the office and did “mention in the presence of everyone there I had a weird dream.” According to Judge R.R., he remembered the incident only because, as he was leaving the courthouse, C.C. asked him, “You are not going to tell me what that dream was about.” Judge R.R. testified, “I said no. And she made the comment, Was it about Judge M.M., and laughed. She went in the office. I went to my car and left.” Judge R.R. could not recall the contents of the dream but only remembered that it was a weird dream.
C. Offensive Office Conversation and Conduct
¶ 11. The same week the dream incident occurred, another female employee, a constable, B.B., Judge R.R. and C.C. had a conversation in the office about a video store in a nearby town that carried X-rated movies. C.C. testified that Judge R.R. said he and his wife had been to the store and had watched X-rated movies. She admitted that she took part in the conversation, though she was uncomfortable. C.C. also stated that general conversations among office staff, lawyers, police officers and judges were common in the office and sometimes those conversations were off color or might have some sexual content, but “not to this extent.”
¶ 12. When asked about sexual conversations in the office, Judge R.R. said there was sexually related banter in the office, but that he did not pay attention to it or act to stop it; that he may have been asked a question and answered a question; but, he always behaved professionally.
¶ 13. B.B. said she had no personal knowledge of Judge R.R.’s making any sexually related comments to C.C., but said sometimes in the office there is an air of joking around and sometimes sexual things come up. She added that Judge R.R. has participated in those conversations in a joking way and that C.C. usually had some commentary when the sexually related conversations occurred. B.B. recalled that she, Judge R.R., the constable, and the other female employee have talked about porno movies.
¶ 14. The County Constable testified he had never heard Judge R.R. say anything inappropriate in the presence of the clerks, had not seen Judge R.R. touch C.C. and did not recall a conversation about video tapes.
¶ 15. C.C. also testified that the only chairs in the office area are the ones for the women who work there, though it is not unusual for police officers or those who have business in the office to sit in any open chair. She alleged that Judge R.R. “... would get in my chair and he would swing around in the chair, you know, just playing in the chairs, playing.” While sitting in her chair, Judge R.R. would be “just spread-eagle just about.”
¶ 16. According to C.C., Judge R.R. had made a comment about a hole in his blue jeans while sitting in her chair: “He said, I shouldn’t have wore these because they have a hole right here, and pointed to his upper — I don’t remember his right or his left leg, but it’s towards the middle.”
¶ 17. Judge R.R. denied owning a pair of ripped jeans and added that he does not wear jeans on days when he is in court, but he has worn jeans to the court office on other days.
¶ 18. Regarding C.C.’s chair, Judge R.R. stated that he sat wherever there was a vacant chair, and that included C.C.’s chair. He further stated that sheriffs deputies, patrolmen and constables also sat in the office chairs whenever there was a vacant chair. He was not aware of any problems caused by him or anyone else sitting in the clerks’ chairs.
¶ 19. The constable and a state trooper both testified that officers sit in any of the clerks’ chairs in the office whenever there is an empty seat.
¶ 20. Judge R.R. described a confrontation with C.C. which took place on July 30, *227 1996. On July 29, Judge R.R. asked C.C. to page a constable to serve a warrant. Before the constable that C.C. paged arrived, another constable came by the office and Judge R.R. told C.C. to give that constable the warrant to serve. The next morning when he came into the office, C.C. yelled at him, “I’m pissed off at you.” Judge R.R. was very concerned and asked C.C. what was wrong. Allegedly C.C. answered that she did not like his telling her to do something and then changing his mind. At that point Judge R.R. said she “turned red in the face and water started coming down her eyes. So she just said, Leave me alone.” From that point on, Judge R.R. said he noticed things in the office weren’t the same. C.C. testified the incident may have happened, but she did not remember it.
¶ 21. The housekeeper who works about two hours a day at the justice court remembered C.C.’s yelling at Judge R.R.. The incident had upset her.
¶ 22. Judge R.R. testified he asked Judge M.M. about the atmosphere in the office. He was concerned because C.C. and B.B. were “acting strange”. He told Judge M.M. that there had been a lot of laughing, joking and carrying on in the office and that if he had done anything to offend them, he was sorry. According to Judge R.R., Judge M.M.’s response was whatever happened should not have happened in the first place.
¶23. On several occasions, Judge R.R. asked deputy clerk B.B. about problems in the office and problems with her and C.C.. He had even called B.B. at home to inquire. According to Judge R.R., B.B. denied there were problems.
¶ 24. B.B. also testified that it was not unusual for she and Judge R.R. to call each other at home to discuss court business. She remembered two calls from Judge R.R. when he asked about C.C..
¶ 25. B.B. testified Judge R.R. came into the office one morning and came to her desk and while she, Judge R.R. and the other clerks were talking, Judge R.R. said if he had ever offended anyone, he was sorry. She said she was never offended, but she accepted his apology. According to B.B., C.C. told Judge R.R. she did not accept his apology. B.B. said when this apology occurred, she had no idea what was going on and could not recall when this apology occurred.
¶ 26. In answering a question by one of the commission panel members, B.B. testified she considered C.C. to be a sensitive person. She also testified that she had known Judge R.R. before he was elected to the bench and that he was well respected and a leader in the community.
D. Offensive Comments about “Checking Out” Men
¶ 27. C.C. stated that while she and Judge R.R. were alone, Judge R.R. commented that he noticed how she “checked out” all the men came into the office and asked her “You check me out too, don’t you?” C.C. stated this made her uncomfortable.
¶28. Judge R.R. denied asking C.C. about her “checking out” people in the office.
¶ 29. Justice Court Judge M.M. testified she is the other justice court judge in the County. She testified she was not present at the time of the alleged incident, but C.C. told her about it a day or so later. Judge M.M. could not pinpoint the exact date, but she did say it occurred in the middle of August. She also testified she had two conversations with Judge R.R. about the incident. One conversation took place after she spoke with C.C.. In the first conversation, Judge R.R. came by Judge M.M.’s office and, according to Judge M.M., Judge R.R. said, “I said something to Miss C.C. the other day I shouldn’t have said, but it won’t happen again.” The second conversation took place “a long time after August” and concerned C.C.’s complaint finally getting settled. At no time during her testimony did Judge M.M. elaborate on the content of *228 C.C.’s statements to her. Judge M.M. only referred to “what Ms. C.C. told me he said.” Judge M.M. testified Judge R.R. and C.C. got along well before and after the alleged incident.
Mitigating Factors
¶ 30. Judge R.R.’s attorney attempted to elicit testimony from Judge R.R. and the state trooper related to Judge R.R.’s status in the community, his reputation and general character evidence. These attempts were stopped by Judge 'Wise, who stated Judge R.R. would be given an opportunity to bring in character evidence and evidence of mitigating circumstances after the Commission heard evidence related to the incident. However, no evidence of mitigating circumstances or character was offered, despite an offer for such by Judge Wise at the conclusion of the hearing.
Proceedings by the Commission
¶ 31. At the hearing, Judge Wise determined the parties would wait for a transcript to be prepared before submitting proposed findings of fact and conclusions of law. Commission’s counsel and Judge R.R. filed proposed findings of fact and conclusions of law on December 16, 1997. The Committee accepted the Commission’s proposed findings on January 16, 1998. Judge R.R. filed his objections on January 30, 1998. The Commission records indicate on February 13, 1998, it adopted the findings of the hearing panel and recommended a public reprimand and assessment of costs in the amount of $1,338.59.
¶ 32. In its findings of fact, the Commission found Judge R.R. did direct sexually harassing remarks and offensive conduct towards C.C. during the week of August 12, 1996, through August 16, 1996. The Commission further found Judge R.R. touched C.C. on her shoulders several times during that week and that Judge R.R.’s testimony was'not credible, particularly with regard to his dream.
¶ 33. The Commission found Judge M.M.’s testimony about her two conversations with Judge R.R. about the incident was reliable, but that Judge R.R. was “less than truthful when he explained why he apologized to the clerks if he had offended them and why he called B.B. to ask what was wrong with C.C.. Simply put, Judge R.R.’s answers to the panel’s questions were confusing, contradictory and unsatis- . factory.”

DISCUSSION OF LAW

STANDARD OF REVIEW

¶ 34. “The findings of the Commission must be based upon clear and convincing evidence.” Mississippi Comm’n on Judicial Performance v. Ishee, 627 So.2d 283, 286 (Miss.1993); see also Commission on Judicial Performance Rule 8 D. This Court conducts a de novo review of judicial misconduct proceedings, and gives deference to the findings of the Commission. Although this Court is not bound by those findings, it gives great deference to the decision of the Commission when the Commission’s findings are based on clear and convincing evidence. Mississippi Comm’n on Judicial Performance v. Dodds, 680 So.2d 180, 190 (Miss.1996); Mississippi Judicial Performance Comm’n v. Peyton, 555 So.2d 1036, 1038 (Miss.1990).
I. THERE IS NOT CLEAR AND CONVINCING EVIDENCE THAT JUDGE R.R. VIOLATED CANONS 1, 2A, 2B, 3A(1), AND 3A(3) OF THE CODE OF JUDICIAL CONDUCT OF MISSISSIPPI JUDGES, OR SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED
¶ 35. In discussing the meaning of section 177A of the Mississippi Constitution, this Court has explained: *229 tice which brings the judicial office into disrepute.’ This Court has defined ‘willful misconduct’ as follows:
*228 Section 177A of the Mississippi Constitution of 1890 provides that upon recommendation of the Commission, this Court may sanction judges for ‘willful misconduct in office or conduct which is prejudicial to the administration of jus-
*229 Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.
Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Mississippi Comm’n on Judicial Performance v. Russell, 691 So.2d 929, 936-37 (Miss.1997) (quoting Mississippi Comm’n on Judicial Performance v. Milling, 651 So.2d 531, 538 (Miss.1995)).
¶ 36. Judge R.R. is also charged with violating the following canons of judicial conduct:
CANON 1
A Judge Should Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
CANON 2
A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
CANON 3
A Judge Should Perform the Duties of His Office Impartially and Diligently
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply: A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism.
[[Image here]]
(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of *230 lawyers and of his staff, court officials, and others subject to his direction and control.
¶ 37. Judge R.R. argues based on the record, clear and convincing evidence he violated the above cannons and section of the Mississippi Constitution does not exist.
¶ 38. The Commission correctly states in its brief whether Judge R.R.’s behavior in this case meets the legal definition of sexual harassment in the workplace is not germane to the question of whether the conduct constitutes willful misconduct in office and conduct which brings the judicial office into disrepute. The question to be decided is whether, based on the record, there is clear and convincing evidence Judge R.R. violated the above cannons.
¶ 39. C.C.’s complaint about Judge R.R.’s actions during the week of August 12, 1996, addressed four topics: Judge R.R.’s touching her shoulders; Judge R.R.’s telling her about a sexual dream; conversations in the justice court office about a pornographic video store in a nearby town; and, comments about C.C. “checking out” the men in the office and “checking out” Judge R.R..
¶ 40. For the first three topics above, based on a review of the record, no clear and convincing evidence exists Judge R.R. committed judicial misconduct constituting willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute.
¶41. Although Judge R.R. admitted he touched C.C.’s shoulders, it is clear from Judge R.R.’s testimony and B.B.’s testimony that Judge R.R. did so only to get C.C.’s attention. B.B. testified she saw Judge R.R. touch C.C. only twice. After B.B. twice told Judge R.R. C.C. did not like to be touched, B.B. never saw him touch her again. Even if we assume during the week of August 12, 1996, Judge R.R. touched C.C.’s shoulders, described by B.B. as two taps on the shoulder to get C.C.’s attention, this does not rise to the level of willful misconduct in office and conduct which brings the judicial office into disrepute.
¶ 42. It is apparent from the testimony of B.B., C.C. and Judge R.R. from time to time in the clerk’s office conversations among office staff, police officers, constables and others in the office would cover sexual or off color topics. Judge R.R. and B.B. confirmed both participated in a discussion about a video store and this discussion covered sexual products or videos. Neither could remember when this conversation took place. C.C. confirmed she also participated in this and other sexually related conversations. Although Judge R.R.’s participation in this conversation and conversations of this type among people in the office in general may have been inappropriate, this conduct does not rise to the level of willful misconduct in office and conduct which brings the judicial office into disrepute.
¶ 43. Judge R.R. admitted he came into the office one morning and said,“I had a weird dream.” In her complaint, C.C. alleged Judge R.R. told her about a sexual dream; but, at the hearing, C.C. testified Judge R.R. never said his dream was sexual, rather she testified “the overall feel of the way he had been directing statements” to her led her to think it was sexual. This direct contradiction to the charge made in the complaint cannot support a finding of clear and convincing evidence Judge R.R. committed willful misconduct in office and conduct which brings the judicial office into disrepute.
¶ 44. The final topic concerns C.C.’s charge Judge R.R. made inappropriate statements to her while she and Judge R.R. were alone. She charged Judge R.R. said that he noticed how she “checked out” all the men that came into the office. C.C. also said Judge R.R. said, “You check me out too, don’t you?” Clear and convincing evidence does exist Judge R.R. made these statements.
*231 ¶ 45. The Commission gave great weight to Judge M.M.’s testimony. Even though Judge M.M. was not present at the time the incident occurred, she had conversations about the incident with both Judge R.R. and C.C.. Judge M.M. testified C.C. told her about the incident and Judge R.R. told her that he said something that he should not have said. Judge M.M.’s testimony provides clear and convincing evidence Judge R.R. made these statements.
¶46. We have not addressed whether statements such as these constitute willful misconduct in office and conduct which brings the judicial office into disrepute. Willful misconduct in office has been defined as
the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith... .Wilful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Mississippi Comm’n on Judicial Performance v. Vess, 692 So.2d 80, 88-84 (Miss.1997) (quoting Mississippi Comm’n on Judicial Performance v. Haltom, 681 So.2d 1332, 1334-35 (Miss.1996) (quoting Mississippi Comm’n on Judicial Performance v. Ishee, 627 So.2d 283, 289 (Miss.1993) (quoting In re Quick, 553 So.2d 522, 524 (Miss.1989) (quoting In re Anderson, 412 So.2d 743, 745 (Miss.1982) (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)))))).
¶ 47. The Commission cites only Geiler v. Commission on Judicial Qualifications, 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (1973), for the proposition“offensive, undignified personal conduct that does not violate the law may nonetheless give rise to judicial discipline.” It is on this basis that the Commission argues Judge R.R.’s conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice.
¶ 48. In Geiler, a California judge was removed from the bench for continued and prolonged use of vulgar and profane language in and out of court. In addition to his use of language, Judge Geiler also attacked and threatened in open court to again attack an attorney with a “battery-operated object resembling a penis and sometimes referred to as a ‘dildo.’ ” Geiler, 110 Cal.Rptr. 201, 515 P.2d at 5 n. 6. Judge Geiler grabbed the testicles of a traffic court commissioner causing him to nearly pass out. Id. He also referred to his clerks as “just a fucking clerk” and used similar language in his dealings with attorneys in and out of the courtroom. Id.
¶ 49. The California Supreme Court removed Judge Geiler for his “crude and offensive conduct in public places.” Id. at 3. The court determined “[t]he ultimate standard for judicial conduct must be conduct which constantly reaffirms fitness for the high responsibilities of judicial office. It is immaterial the conduct concerned was probably lawful, albeit unjudicial, or that petitioner may have perceived his offensive and harassing conduct as low-humored horseplay.” Id. at 8.
¶ 50. The Commission’s attempt to equate Judge R.R.’s conduct with that of Judge Geiler is not persuasive. Judge Geiler’s conduct was persistent and pro *232 longed and involved extreme and outrageous behavior. Judge R.R.’s conduct was limited to inappropriate acts over the week of August 12. Even assuming all of the charges against Judge R.R. are valid (although only the “checking out” conversation with C.C. as described above is supported by clear and convincing evidence), such conduct does not rise to the level of the conduct in Geiler.
¶ 51. Even though Judge R.R.’s conduct does not rise to the level of the conduct described in Geiler, we find Judge R.R.’s statements to C.C. constituted willful misconduct in office and conduct prejudicial to the administration of justice. Under the definition of willful misconduct laid out in Vess, Judge R.R.’s statements to C.C. can be considex-ed to have, through “negligence or ignorance not amounting to bad faith,” brought the office into disrepute. Vess, 692 So.2d at 83.
¶ 52. This Court can accept, reject or modify the Commission’s recommended punishment. Mississippi Comm’n on Judicial Performance v. Sanders, 708 So.2d 866, 871 (Miss.1998). We have held when dealing with judicial misconduct, sanctions imposed should fit the offense and be consistent with -sanctions imposed in similar cases. Vess, 692 So.2d at 84. We also consider seven mitigating factors that weigh in favor of confidential, private action when determining whether a reprimand should be public or private. Mississippi Comm’n on Judicial Performance v. Atkinson, 645 So.2d 1331, 1336-37 (Miss.1994).
¶ 53. The Commission argues Judge R.R.’s conduct is severe enough to warrant a public reprimand. Judge R.R. refers this Court to Appendix B of Walker, 565 So.2d at 1128-32, which is a summary of cases involving judicial discipline. In the cases cited in Walker, and in the cases since Walker, it is clear judges have been publicly reprimanded only for actions where they personally profited or where they seriously abused the position of judge. See Appendix.
¶ 54. In Judge R.R.’s case, the evidence presented supports a finding Judge R.R. made sexually harassing remarks to C.C. on one occasion during the week of August 12, 1996. We do find Judge R.R.’s conduct constituted willful misconduct and conduct prejudicial to the administration of justice which brings the office into disrepute. However, based on the evidence presented, and a review of past sanctions approved and issued by this Court, we find Judge R.R.’s conduct does not rise to the level that warrants a public reprimand. We find Judge R.R. should be privately reprimanded and taxed with costs.
II. THE COMMISSION DID NOT ALLOW WITNESSES TO BE EXAMINED CONCERNING MITIGATING FACTORS THE COMMISSION AND COURT MUST CONSIDER, AND DID NOT ALLOW CHARACTER WITNESSES TO TESTIFY.
¶ 55. Judge R.R. argues at the hearing he was not given an opportunity to develop these mitigating factors or introduce character witnesses. The record indicates Judge Wise limited Judge R.R.’s ability to introduce character evidence and evidence of mitigating factors. Early in Judge R.R.’s testimony, his attorney questioned him about his election and his position in the community. Judge Wise sustained a relevancy objection and instructed Judge R.R.’s attorney that mitigating factors would only be considered at the punishment stage after the Commission had heard evidence relating to the incident in question.
¶ 56. During the testimony of the state trooper, Judge R.R.’s attorney asked about Judge R.R.’s position in the community. Again Judge Wise prevented Judge R.R.’s attorney to bringing up evidence relating to the mitigating factors. Judge Wise stated that the panel would hear this type of evidence only at the punishment stage and not before.
*233 ¶ 57. At the close of the hearing this exchange took place.
JUDGE WISE: Now, I have some concerns about Ms. Covington’s issue regarding the character of Judge R.R.. And I don’t want this matter to be reversed on the fact that we didn’t give you a chance to put it in any mitigating circumstances after the fact. Now that we’ve had this trial, in terms of anything that you would like for us to consider, you can do that through affidavits and you can do that through your proposed finding of facts and conclusion of law in regard to Judge R.R.’s character.
MS. COVINGTON: Well, Your Honor, we did have two witnesses with us.
JUDGE WISE: Well, let’s bring them on.
MS. BUCKLEY: Your Honor, might I say in response, I might have aggravating circumstances then.
JUDGE WISE: Okay. Let me see the lawyers at the bench for one minute. (Off the record discussion.)
JUDGE WISE: Anything else we need to put on the record? If not, then we stand adjourned.
No evidence of character or mitigating factors was taken.
¶ 58. Judge R.R. was entitled to present two character witnesses. See Commission on Judicial Performance Rule 8 D (“The judge shall be limited to two (2) character witnesses who may testify at the formal hearing; he may submit the affidavits of any other character witnesses he deems appropriate.”). From a review of the record, it appears Judge R.R. declined the invitation to present his two character witnesses at the conclusion of the hearing for reason that were not stated.
¶ 59. The seven mitigating factors applied to the evidence available in the record are:
(1)The length and character of the judge’s public service. At the time of the hearing, Judge R.R. had served as Justice Court Judge for a year and ten months. In August 1996, Judge R.R. had served for seven months.
(2) Positive contributions made by the judge to the courts and the community. Some evidence exists in the record that Judge R.R. served the community as a Little League Baseball coach and a church leader and that he was a community leader.
(3) The lack of prior judicial precedent on the incident in issue. As stated above, there is no Mississippi case that deals with this issue.
(4) Commitment to fairness and innovative procedural form on the part of the judge. No evidence in the record exists on this point.
(5) The magnitude of the offense. A single incident during the week of August 12,1996.
(6) The number of persons affected. Only C.C. was affected. ■
(7) Whether moral turpitude was involved. One instance of directing improper, sexually related comments to a subordinate, but nothing involving honesty.
Atkinson, 645 So.2d at 1336-37 (listing the above factors).
¶ 60. The record shows Judge Wise did offer Judge R.R. an opportunity to introduce evidence at the end of the hearing. Because of Judge Wise’s offer and the requirement of Judge R.R. to make a record, Judge R.R.’s claim he was not given an opportunity to present evidence of good character and mitigating circumstances is not supported by the record.
¶ 61. This assignment has no merit.
III. THE COMMISSION USED OTHER ABUSIVE AND OVERLY AGGRESSIVE TACTICS AND DID NOT FOLLOW ITS RULES
¶ 62. Judge R.R. charges the Commission failed to follow several of its own procedural rules and that the Commission used overly aggressive tactics.
*234 ¶ 63. We have held the accused “in a disciplinary matter has the right to notice, a hearing, and cross-examination of the witnesses.” Emil v. The Mississippi Bar, 690 So.2d 301, 309 (Miss.1997) (citing Netterville v. Mississippi State Bar, 397 So.2d 878, 884 (Miss.1981)). We have also stated disciplinary rules such as the Rules of the Commission on Judicial Performance are directory and not jurisdictional. See Emil, 690 So.2d at 312; Fougerousse v. Mississippi State Bar Ass’n, 563 So.2d 1363 (Miss.1990); Myers v. Mississippi State Bar, 480 So.2d 1080, 1090 (Miss.1985), cert. denied, 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23 (1986).
¶ 64. Judge R.R. was afforded notice of the complaint and the opportunity- to cross-examine witnesses. Although the Commission failed to follow all its rules to the letter, Judge R.R. was not prejudiced by this failure.
¶ 65. As to Judge R.R.’s claim the Commission panel was overly aggressive in its tactics, nothing in the record suggests the Commission panel members acted inappropriately.
¶ 66. For the reasons above, this assignment is without merit.

CONCLUSION

¶ 67. Based on a review of the record, clear and convincing evidence exists Judge R.R. made sexually harassing remarks to C.C. during the week of August 12, 1996 when, while alone with C.C., he commented she “checked out” men in the office and “checked out” him too. This conclusion is best supported by the testimony of Judge M.M.. This conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the office into disrepute.
¶ 68. Based on a review of cases involving public reprimands- for judicial misconduct, Judge R.R.’s conduct does not rise to the level of misconduct that warrants a public reprimand. We find Judge R.R. should be privately reprimanded and taxed with costs.
¶ 69. JUSTICE COURT JUDGE R.R. SHALL BE PRIVATELY REPRIMANDED AND ASSESSED ALL COSTS.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, JAMES L. ROBERTS, Jr., SMITH AND MILLS, JJ., CONCUR.
McRAE, J., NOT PARTICIPATING.
Appendix
In the following cases, judges were given public reprimands or public reprimands and fines for the conduct described. This list includes public reprimand cases cited in Walker and public reprimand cases after Walker.
Mississippi Comm’n on Judicial Performance v. Fisher, 706 So.2d 1107 (Miss.1998) (public reprimand for vacating judgment without notice or hearing); Mississippi Comm’n on Judicial Performance v. Sanders, 708 So.2d 866 (Miss.1998) (public reprimand for -suspending sentence of former client and placing second inmate on probation after his conviction and sentence had been affirmed by Court of Appeals); Mississippi Comm’n on Judicial Performance v. Vess, 692 So.2d 80 (Miss.1997)(public reprimand for ex parte communications, interfering with right to post bond and case in which judge signed defendant’s warrant); Mississippi Comm’n on Judicial Performance v. Russell, 691 So.2d 929(Miss.1997) (public reprimand for improperly releasing prisoners and éx parte communications); Mississippi Comm’n on Judicial Performance v. Whitten, 687 So.2d 744 (Miss.1997) (public reprimand for serious life threatening actions taken out of Court); Mississippi Comm’n on Judicial Performance v. Emmanuel, 688 So.2d 222 (Miss.1996) (public reprimand for improperly reducing DUI charges in violation of statute and ordering *235 fines in excess of statutory limts [limits]); Mississippi Comm’n on Judicial Performance v. Fletcher, 686 So.2d 1075 (Miss.1996) (public reprimand for filing perjury affidavit against defendant, issuing an arrest warrant for him, trying and convicting him); Mississippi Comm’n on Judicial Performance v. Haltom, 681 So.2d 1332 (Miss.1996) (public reprimand for failing to resign from office while running for nonjudicial office); Mississippi Comm’n on Judicial Performance v. Bowen, 662 So.2d 551 (Miss.1995) (public reprimand for dismissing numerous speeding and traffic tickets and ex parte communications); Mississippi Comm’n on Judicial Performance v. Hartzog, 646 So.2d 1319 (Miss.1994) (public reprimand for notarizing deed with false acknowledgment and entering orders in cases not pending in his court); Mississippi Comm’n on Judicial Performance v. Atkinson, 645 So.2d 1331 (Miss.1994) (public reprimand for setting accused’s bail while judge and seeking to have bail lowered later as practicing attorney); Mississippi Comm’n on Judicial Performance v. Underwood, 644 So.2d 458 (Miss.1994) (public reprimand and fine for altering judgment after ex parte communications); Mississippi Comm’n on Judicial Performance v. Ishee 627 So.2d 283 (Miss.1993) (public reprimand for failure to resign from office while seeking non-judicial office); Mississippi Judicial Performance Comm’n v. Cantrell, 624 So.2d 94 (Miss.1993) (public reprimand for failure to pay debt and improper use of criminal sanctions in civil matter); Mississippi Comm’n on Judicial Performance v. Gunn, 614 So.2d 387 (Miss.1993) (public reprimand for ticket fixing and ex parte communications); In re Seal, 585 So.2d 741 (Miss.1991) (public reprimand and fine for improper handling of traffic offenses and allowing others to adjudicate cases); Mississippi Judicial Performance Comm’n v. Cowart, 566 So.2d 1251, (Miss.1990) (public reprimand for improperly dismissing cases without hearing State’s side); Mississippi on Judicial Performance Comm’n v. Walker, 565 So.2d 1117 (Miss.1990) (public reprimand for holding unsuccessful litigant in contempt); Mississippi Judicial Performance Comm. v. Peyton, 555 So.2d 1036 (Miss.1990) (public reprimand for personally receiving money from fines and failing to properly handle criminal cases); In re Bailey, 541 So.2d 1036 (Miss.1989) (public reprimand for jailing litigant for civil debt and interference with orders of another judge); In re Inquiry Concerning Baker, 535 So.2d 47 (Miss.1988) (private reprimand for telephone call to litigant involved in action pending before judge to solicit political support); In re Mullen, 530 So.2d 175 (Miss.1988) (public reprimand, $500.00 fine and 30-day suspension without pay for attention to docket entry, refusal to allow debtor to redeem property and purchase of replevined vehicle by judge and coverup); In re Chambliss, 516 So.2d 506 (Miss.1987) (public reprimand for intimidating police officers who stopped Chambliss for traffic offenses — attempting to have officers fired; disregarding law — indicated by failure to acquire new license plate and register in county of residence; interview with rape victim; disregard of judicial process; involvement in bond election); In re Hearn, 515 So.2d 1225 (Miss.1987) (public reprimand for finding defendants not guilty of traffic violation without trial; assessing constable fees to those defendants; allowing JNOV in criminal DUI proceeding after defendant found guilty by jury; interfering with orderly assignment of cases; Improperly conduct in handling bad check cases); In re Cooksey, 515 So.2d 957 (Miss.1987) (public reprimand for disruption of court proceedings; accusations of impropriety against another judge and wildlife officers; acting on behalf of criminal defendant; other similar offense disposed of by informal commission action and respondent’s assurances that conduct would not recur); In re Inquiry Concerning Judge [William] Anderson, 447 So.2d 1275 (Miss.1984) (public reprimand for failure to issue writs of garnishment after receiving filing fees; holding job as city policeman while holding office of justice *236 court judge); In re Inquiry Concerning a Judge Odom, 444 So.2d 835 (Miss.1984) (public reprimand and $250.00 fine for utilizing criminal process to collect “bad checks;” failing to properly docket and process “bad checks;” failing to collect court costs deposited in advance from merchants to whom “bad checks” had been tendered; failing to keep required records; collecting court costs from county for cases which were never docketed); In re Lambert, 421 So.2d 1023 (Miss.1982) (public reprimand and $2,000 fine for utilizing criminal process to collect civil debts; failing to properly docket and process bad checks; violating statutory provisions of Mississippi Code respecting the jurisdiction of the justice court; failing to properly collect and account for contributions to county law library fund; collecting fees in excess of statutory maximum and paid fees in excess of statutory maximum to court officials; having pecuniary interest in outcome of litigation filed in his court); In re Branan, 419 So.2d 145 (Miss.1982) (public reprimand and $1,000 fine for unlawful conduct in procedure used in collecting 286 bad checks).