CARLSON, Presiding Justice,
 

 for the Court:
 

 ¶ 1. The Mississippi Commission on Judicial Performance filed a formal complaint charging Quitman County Second District Justice Court Judge Joe M. Brown with judicial misconduct constituting willful misconduct in office and conduct prejudicial to the administration of justice which brought the office into disrepute, thus causing such conduct to be actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890, as amended. The Commission’s recommendation is now before this Court pursuant to Mississippi Commission on Judicial Performance Rule 10. Although a more detailed procedural history follows below, we state here that this Court has determined the appropriate sanction for Judge Brown is that he be publicly reprimanded, suspended from the office of justice court judge, District Two, Quitman County, for a period of thirty days without pay, fined $1,500, and assessed costs in the sum of $1,955.20.
 

 FACTS AND PROCEEDINGS BEFORE THE COMMISSION
 

 ¶ 2. The complaint against Judge Brown stemmed from events that occurred just before noon on February 7, 2008, in the Office of the Justice Court Clerk in Quit-man County. In the clerk’s office that morning were the complainant in this case, former Deputy Justice Clerk S.W.;
 
 [1]
 
 Justice Court Clerk Gloria Survillion; Deputy Justice Clerk Lucille Williams; and the Respondent, Judge Brown. S.W. was working at her desk at her computer. Standing to her immediate right was Gloria Survillion. Behind S.W. at the fax
 
 *16
 
 machine was Judge Brown.
 
 [2]
 

 ¶ 3. After briefly assisting Judge Brown at the fax machine, Williams returned to her desk, which faced S.W.’s desk. According to Survillion’s observation, as S.W., who was seated in her chair, leaned forward in the direction of her computer screen, her sweater raised, inadvertently exposing her lower back and posterior. Judge Brown then walked up behind S.W. and exclaimed, “Look a-here! Look a-here!” Judge Brown then licked his finger and slid it across S.W.’s exposed lower back, putting his finger “down in the top of [her] blue jeans,” to just above her posteri- or. Startled, S.W. yelled and leapt from her chair, which rolled backward towards Judge Brown, who stepped back to avoid being hit by the chair. S.W. glared at Judge Brown, and Judge Brown then placed his hands on S.W.’s shoulders and stated, “[S.W.], I’m not going to do you that way anymore.”
 

 ¶ 4. The testimony of both Williams and Survillion before the three-member Committee (appointed by the Commission) was in accord with S.W.’s testimony concerning the incident. Both of the witnesses testified that S.W. was dressed in proper work attire on that morning. Both of the women likewise testified that the back of S.W.’s chair came to her shoulders and would have shielded everyone in the office from being able to view S.W.’s posterior.
 

 ¶ 5. S.W. returned to work the Monday following the incident. She testified before the Committee that Judge Brown came into the office on Monday and apologized to her. According to S.W., while no one else was in the office, Judge Brown came to her desk, apologized and then told her that the reason why he called attention to her exposed skin in the manner in which he did was because an employee with the Mississippi Department of Corrections (MDOC), Mack Cox, had been standing at the public viewing window of the clerk’s office and was staring at S.W.’s posterior. Judge Brown was said to have referred to Cox, who is an African-American, with a racial epithet. S.W. testified that, while Cox was often in the clerk’s office, given the close proximity of the MDOC office, she did not recall seeing Cox in the justice court office on the morning of February 7, which was the day of the incident.
 

 ¶ 6. S.W. testified that the incident on February 7, 2008, was not the first time she had been touched inappropriately by Judge Brown. According to S.W., Judge Brown had touched her one other time while she was bent over the file cabinet. S.W. stated that on that occasion, Judge Brown had touched her on the small of her back by running his finger across her back “above [her] pants line.” She admittedly never reported this previous incident.
 

 ¶ 7. S.W. and Survillion reported the February 7 incident to Butch Scipper, Quitman County Chancery Clerk and County Administrator. Scipper and Board of Supervisors President Brooks Earnest met with Judge Brown regarding the allegations. Scipper testified that during this meeting, Judge Brown stated that he “punched” S.W. below the shoulder blade to alert her to the fact that her blouse had come up in the back and was exposing her underwear. According to Scipper, Judge Brown stated that his concern for S.W.’s indecency was due to Mack Cox having been present at the public window of the clerk’s office and that Cox was “looking down her pants.” According to Scipper, during the course of this discussion, Judge Brown used a racial slur in reference to Cox. This fact was disputed by Brooks
 
 *17
 
 Earnest, who testified that Judge Brown did not use any derogatory racial term during this meeting.
 

 ¶ 8. Judge Brown testified that on February 7, S.W. was not at her desk, but instead, she was bent down over the file cabinet, filing papers.
 
 [3]
 
 Judge Brown testified that S.W.’s “rear end” was exposed while she was bent over at the filing cabinet. According to Judge Brown he said to Lucille Williams, “Lucille, look at this.” He then touched S.W. under her shoulder blade. He explained that he was trying to call to S.W.’s attention that her lower posterior was exposed, so that S.W. would pull down her blouse in the back. Judge Brown testified that Mack Cox was present and was staring at S.W.’s exposed backside, but Judge Brown denied using any racially derogatory terms when discussing the incident with S.W. or with Scipper and Brooks. As previously mentioned, the eyewitnesses, Williams and Survillion, disputed this testimony. Furthermore, both women testified that Cox was not present in the office that morning, and even if Cox had been present at the public viewing window, he would not have seen S.W.’s posterior because the back of S.W.’s chair covered her back to her shoulders and would have obscured his view.
 

 ¶ 9. Proceedings began with S.W. filing a complaint with the Commission. Following a hearing, the Commission found as follows:
 

 Respondent [Brown’s] testimony is not credible. At the time of the incident, there were four people in the office; Survillion, Williams, [S.W.] and Respondent. Although Mack Cox may have been in the office earlier in the day, he was clearly not in the office at the time Respondent touched [S.W.]. Survillion, Williams and [S.W.] all testified to the same events. The uncorroborated testimony of Respondent differed greatly. As noted above, even had Mack Cox been in the public area of the office at that time, he could not have seen [S.W.]’s back from where Respondent stated that Cox was standing. The back of S.W.’s chair came up to her shoulders.
 

 Further, Respondent’s testimony that he touched [S.W.]’s bare skin on her back, “just below her shoulder blade” can only be physically possible if the bottom of S.W.’s shirt was at or above the bottom of her shoulder blade. Clearly, based upon the testimony of Survillion, Williams and [S.W.], that did not happen ....
 

 As to the allegation that Judge Brown used a racially derogatory term, the Commission noted in its findings of fact that both S.W. and Scipper had testified that Judge Brown, in two separate conversations with each of them, had used this term in reference to Cox when giving his explanation for alerting S.W. to her exposed backside. Moreover, the Commission noted testimony from Jimmy Miller, Quitman County Prosecutor, that Judge Brown had used this same derogatory term in an unrelated, private conversation with him. The Commission further noted in its findings of fact, however, that Miller had never heard Judge Brown use this term in the courtroom, nor did Miller believe any of Judge Brown’s decisions to have been formed based on racial bias.
 

 ¶ 10. In addition to testifying on his own behalf, Judge Brown called three witnesses. One witness was Miller, who testified that, in his official capacity as county prosecutor, he had never known Judge Brown to render a decision based on “racial animus, prejudice, [or] bias.” Charles
 
 *18
 
 Johnson, a former constable, testified that he had been in Judge Brown’s courtroom on many occasions during his sixteen years of service and that he believed Judge Brown to be a fair judge and had never heard Judge Brown use a racial slur. Sheridan Boyd, a former member of the Board of Supervisors, testified that Judge Brown had never received any complaints before this incident, nor had she ever heard Judge Brown use a racial slur. Moreover, Board of Supervisors President Brooks Earnest’s testimony disputed Scip-per’s testimony in that Earnest said he had never heard Judge Brown use a racial slur during their meeting with Judge Brown. Earnest testified that Scipper did not care for Judge Brown and had not for years. Earnest speculated that the discrepancy between his testimony and Scip-per’s testimony could be explained by the fact that Scipper could have confused what had been reported to him by Justice Court Clerk Survillion as opposed to what had been reported to him in his meeting with Judge Brown.
 

 ¶ 11. Following the October 29, 2009, hearing, the three-member Committee issued its Findings of Fact and Conclusions of Law and Recommendation with one panel member voting to dissent without separate opinion.
 
 [4]
 
 Based on a clear and convincing evidentiary standard, the full Commission, after considering the Formal Complaint, Respondent’s Answer, the testimony at the hearing, and the Committee’s Findings of Fact, Conclusions of Law and Recommendation, adopted the Committee’s findings of facts and issued its own Supplemental Commission Findings of Fact, Conclusions of Law and Recommendation, which was filed with this Court on December 17, 2009. Judge Brown filed his brief in response on January 18, 2010. The Commission filed its Supplemental Brief on January 19, 2010.
 

 ¶ 12. The Commission recommends to this Court that Judge Brown be publicly reprimanded, assessed a fine of $1,500, suspended for a period of thirty days without pay, and assessed costs of this proceedings in the amount of $1,955.20. On the other hand, Judge Brown states that “while the conduct set out herein may constitute poor judgment, which may be interpreted as misconduct,” the more appropriate sanction would be a private reprimand and taxation of costs.
 

 DISCUSSION
 

 ¶ 13. In the complaint against Judge Brown, the Commission asserted that Judge Brown had violated three canons of
 
 *19
 
 judicial conduct, Canon 1, Canon 2A, and Canon 3B(4) & (5). The Commission alleged that Judge Brown had committed “willful misconduct in office” and “conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” Miss. Const, art. 6, § 177A. All findings of misconduct were based on allegations that Judge Brown had touched former Deputy Justice Court Clerk S.W. in an inappropriate manner and that Judge Brown had used a racially derogatory term in referring to an African-American MDOC employee. With certain exceptions noted herein, Judge Brown accepts the Commission’s findings of facts; however, Judge Brown does not contest the Commission’s findings that his conduct is actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890, as amended. Instead, Judge Brown raises the singular issue of whether the sanctions recommended by the Commission, namely a thirty-day suspension without pay and public reprimand, are appropriate.
 

 I. WHETHER JUDGE BROWN’S CONDUCT CONSTITUTES WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BRINGS THE JUDICIAL OFFICE INTO DISREPUTE.
 

 ¶ 14. This Court conducts a de novo review of judicial-misconduct proceedings, yet gives great deference to findings by the Commission when such findings are based on clear and convincing evidence.
 
 Miss. Comm’n On Judicial Performance v. Vess,
 
 10 So.3d 486, 489 (Miss.2009). Notwithstanding “deference to the Commission’s findings, we are also charged to render an independent judgment.”
 
 Id.
 
 (quoting
 
 Miss. Comm’n on Judicial Performance v. Westfaul,
 
 962 So.2d 555 (Miss.2007);
 
 Miss. Comm’n on Judicial Performance v. Sanford,
 
 941 So.2d 209, 212 (Miss.2006)). Thus, this Court “may accept, reject, or modify, in whole or in part, the findings and recommendation of the Commission.” Comm’n on Judicial Performance R. 10(E). Briefly stated, from the record before us, and Judge Brown’s concessions, we are satisfied that the Commission’s findings that Judge Brown’s judicial conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice, which brings the judicial office into disrepute, are based on clear and convincing evidence; therefore, we accept and adopt these findings of the Commission. We thus move to the critical issue of the appropriate sanctions to impose in today’s case.
 

 II. WHETHER PUBLIC REPRIMAND AND SUSPENSION FROM JUDICIAL OFFICE ARE THE APPROPRIATE SANCTIONS FOR JUDGE BROWN.
 

 ¶ 15. The authority of this Court to discipline judges is found in the Mississippi Constitution:
 

 On recommendation of the commission on judicial performance, the supreme court may remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
 

 Miss. Const, art. 6, § 177A. Willful misconduct has been defined by this Court as follows:
 

 
 *20
 
 Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence.
 

 In re Quick,
 
 553 So.2d 522, 524 (Miss.1989) (quoting
 
 In Re Anderson,
 
 412 So.2d 743, 745 (Miss.1982);
 
 In Re Nowell,
 
 293 N.C. 235, 237 S.E.2d 246, 255 (1977)). As to the element of conduct prejudicial to the administration of justice, this Court has held:
 

 Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
 

 Id.
 

 ¶ 16. Judge Brown was found to have violated the following Canons of the Code of Judicial Conduct:
 

 Canon 1:
 

 An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
 

 Canon 2A:
 

 A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
 

 Canon 3B, in pertinent part:
 

 [[Image here]]
 

 (4) Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their direction and control.
 

 (5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge’s direction and control to do so. A judge shall refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and shall require the same standard of conduct of others subject to the judge’s direction and control.
 

 ¶ 17. Judge Brown does not dispute that he touched S.W. in an inappropriate manner. Likewise, Judge Brown does not dispute having used racially derogatory language on prior occasions in private conversations, but he does deny having used a racial slur in reference to Mack Cox in his conversation with S.W., and in his conversation with Scipper and Earnest. Additionally, Judge Brown agrees with the Commissions findings that he exhibited willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute and that he violated Cannons 1, 2A, 3B(4) & (5).
 

 ¶ 18. The factors for determining the appropriateness of sanctions are as follows:
 

 
 *21
 
 (1) The length and character of the judge’s public service; (2) whether there is any prior case law on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating circumstances.
 

 Comm’n on Judicial Performance v. Gibson,
 
 883 So.2d 1155, 1158 (Miss.2004).
 

 (1) Length and character of the judge’s public service.
 

 ¶ 19. Judge Brown has served as Justice Court Judge in Quitman County for eleven and one-half years. Prior to this incident, no complaints had ever been filed with the Commission. The testimony before the Committee showed that at all times Judge Brown had conducted himself in a professional manner in the courtroom. Moreover, testimony reflected that Judge Brown had never used racially biased language in the courtroom, nor did any of the witnesses opine that Judge Brown had ever rendered a racially biased decision.
 

 (2) Whether there is any prior case law on point.
 

 ¶ 20. In
 
 Mississippi Commission on Judicial Performance v. Justice Court Judge R.R.,
 
 732 So.2d 224, 230 (Miss.1999), Judge R.R. was accused of making sexually explicit remarks and of touching a deputy court clerk. More specifically, Judge R.R. was accused of touching a deputy justice court clerk on the shoulder on several occasions despite being asked to stop, of making reference to a sexual dream in the clerk’s presence, of offensive office conversation and conduct in her presence, and of inquiring as to whether the clerk had “checked out” Judge R.R.
 
 Id.
 
 at 225-29. This Court found that his conduct constituted willful misconduct and conduct prejudicial to the administration of justice which brings the office into disrepute; however, this conduct was found not to warrant public reprimand.
 
 Id.
 
 at 232.
 

 ¶ 21. The Commission asserts that the facts of
 
 Justice Court Judge R.R.
 
 are distinguishable from today’s facts in that Judge R.R. touched the deputy clerk on the shoulder
 
 (see id.
 
 at 225); whereas, Judge Brown touched S.W. in a much more inappropriate manner. Judge Brown cites
 
 Justice Court Judge R.R.
 
 in support of his argument that his conduct is similar to that of Judge R.R. and that, likewise, he should receive a private reprimand. This Court finds the argument made by the Commission more persuasive. The manner in which Judge Brown touched S.W. was far more inappropriate than a touch on the shoulder. Judge Brown was said to have licked his finger and slid it down S.W.’s pants to her posterior.
 

 ¶ 22. The Commission cites
 
 Mississippi Commission on Judicial Performance v. Spencer,
 
 725 So.2d 171, 180 (Miss.1998), a case in which Judge Spencer’s pattern of making sexually explicit remarks constituted willful misconduct. The Commission points to this Court’s language in
 
 Spencer,
 
 in which this Court recognized that, while Judge Spencer never propositioned or touched any of the court personnel in an offensive manner, Judge Spencer’s conduct (i.e., sexually explicit language) constituted sexual harassment of court personnel.
 
 Id.
 
 The Commission argues that Judge Brown’s conduct is equally as egregious, despite having never made improper sexual comments, due to the fact that Judge Brown actually touched S.W. rather than merely using inappropriate language. While Judge Spencer was removed from office, it is notable that Judge Spencer was charged with twenty-five counts of ex parte communication, flagrant disregard for the requisite dignity and decorum of the office, failure to perform duties, and
 
 *22
 
 sexual harassment.
 
 See id.
 
 at 177. The number of charges and violations of the Code of Judicial Conduct in
 
 Spencer
 
 are easily distinguished from the present case.
 

 ¶28. In today’s case, Judge Brown’s testimony was that the intent of the inappropriate touch was not to make a sexual advance, but rather to alert S.W. to the fact that her blouse was exposing her posterior. On this particular point as to the events which occurred in the office on the day in question, the Commission, in making its findings of fact, had before it the testimony of Judge Brown, as well as the testimony of S.W., Gloria Survillion, and Lucille Williams. S.W., S.W.’s supervisor, and her colleague all testified that S.W. was dressed appropriately for the office, and that if her posterior had been exposed, it was shielded from plain sight because the back of S.W.’s chair came up to her shoulders. The Committee, which made the recommendation to the Commission, unlike this Court, had the benefit of hearing the witnesses’ testimony and observing the demeanor of the witnesses as they testified during the hearing.
 
 Culbreath v. Johnson,
 
 427 So.2d 705, 708 (Miss.1983). As already stated, we afford great deference to the findings of the Commission [Committee] when based on clear and convincing evidence.
 
 Vess,
 
 10 So.3d at 489. The Commission, on recommendation of the Committee, accepted the version of the events in question as depicted by S.W. and her witnesses, as opposed to that of Judge Brown. We thus are not at liberty today, based on the record, to disturb such findings of fact as adopted by the Commission based on the Committee’s findings.
 

 ¶ 24. The Commission further cites two cases wherein judges were reprimanded for language that was considered racially derogatory.
 
 See Miss. Comm’n on Judicial Performance v. Boland (Boland I),
 
 975 So.2d 882 (Miss.2008);
 
 Miss. Comm’n on Judicial Performance v. Osborne,
 
 11 So.3d 107 (Miss.2009)
 
 (Osborne III).
 
 In
 
 Boland I,
 
 this Court ordered public reprimand for a judge who had made racially disparaging remarks about African-Americans while speaking before an audience at a national drug court convention.
 
 Boland I,
 
 975 So.2d at 898. In
 
 Osborne III,
 
 this Court found that Judge Osborne’s disparaging remarks about Caucasians while speaking before an audience at a voters’ league meeting were in violation of Canons 1, 2(A) & (B), and 3(B)(5) and thus actionable under Section 177A of the Mississippi Constitution of 1890.
 
 Osborne III,
 
 11 So.3d. at 114. This Court suspended Judge Osborne from office for one year, despite the fact that Osborne previously had resigned from office, overruling precedent in
 
 Boland II
 
 that rendered such a suspension moot.
 
 Osborne III,
 
 11 So.3d at 118;
 
 see also Miss. Comm’n on Judicial Performance v. Boland (Boland II),
 
 998 So.2d 380 (Miss.2008) (overruled in part).
 

 ¶ 25. The facts in this case are distinguishable from those of
 
 Boland I
 
 and
 
 Osborne III
 
 inasmuch as Judge Brown did not use the invidious language in a public setting; whereas Judge Boland used invidious language to an audience at a conference, and Judge Osborne to an audience at a political meeting.
 
 See Boland I,
 
 975 So.2d at 898;
 
 see also Osborne III,
 
 11 So.3d at 114. In the end, we find that suspension from office for a period of thirty days, as recommended by the Commission in today’s case, as opposed to the one-year suspension in
 
 Osborne III
 
 is reasonable, especially in light of Judge Osborne’s prior history of judicial misconduct as described in
 
 Osborne III,
 
 11 So.3d at 116.
 

 (3) The magnitude of the offense and the harm suffered.
 

 ¶ 26. S.W. testified that, as a result of Judge Brown’s conduct, she felt uncomfortable around him. She stated that she experienced stress-related exacerbation of a pre-existing condition, ulcerative colitis.
 
 *23
 
 S.W. eventually left her position as deputy justice court clerk. Following S.W.’s complaint to the Commission, Judge Brown began complaining that S.W. was not performing her duties to his satisfaction, despite the fact that Judge Brown had never complained about S.W.’s abilities heretofore. Likewise, even though Judge Brown, through his counsel, in cross-examining S.W. at the hearing before the Committee, attempted to mitigate the harm to S.W. based on the fact that after she left the justice court clerk’s office, she had found a higher paying job, this is of no moment. As noted above, S.W. testified that she suffered mentally and physically from the conduct of Judge Brown.
 

 (U) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
 

 ¶ 27. S.W. testified that the February 7, 2008, incident was the second occasion that Judge Brown had touched her inappropriately. According to S.W., the first incident involved Judge Brown touching her lower back with his finger when S.W. was bent over at the file cabinet. S.W. admittedly never reported this first incident until the February 7 incident. No one else witnessed this alleged first instance of inappropriate touching. Thus, we are unable to conclude that the record supports a finding by clear and convincing evidence that there exits a clear pattern of this behavior.
 

 ¶ 28. Three of the witnesses, S.W., Scipper, and Miller, testified that they had heard Judge Brown use racially disparaging language on at least three occasions in private conversations. Scipper’s testimony that Judge Brown had used a racial slur in his meeting with Scipper and Earnest, in which the three discussed the February 7 incident concerning S.W., was contradicted by Earnest’s testimony that Judge Brown never used such a term during this meeting. The record reveals that there may be a pattern of Judge Brown using this type language in private conversations, although the record does not support allegations of any public use of racially biased language, nor are there any complaints of racially biased judicial decisions being made by Judge Brown. However, when such language is used by a judge, in the private arena or in the public arena, such conduct reflects negatively on the judicial office, and could understandably give the appearance of an inability to render race-neutral decisions.
 

 (5) Whether moral turpitude was involved.
 

 ¶ 29. The Commission argues that Judge Brown’s conduct constitutes moral turpitude. The Commission argues that Judge Brown’s conduct “involves some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others.”
 
 Sanford,
 
 941 So.2d at 217.
 

 ¶ 30. This Court previously has distinguished
 
 Sanford
 
 as follows:
 

 Based on the clearly established precedent and the actual definition of moral turpitude, an action must involve some immorality to rise to the level of moral turpitude. Further, actions involving interference with the administration of justice or which bring the judiciary into disrepute do not necessarily include moral turpitude. If they did, then this Court would have to make a finding of moral turpitude every time it found that a judge should be reprimanded.
 

 Miss. Comm’n on Judicial Performance v. Roberts,
 
 952 So.2d 934, 942 (Miss.2007).
 

 ¶ 31. The facts of this case, coupled with the facts as depicted in
 
 Sanford
 
 and
 
 *24
 
 in
 
 Roberts,
 
 952 So.2d at 942, lend themselves to the conclusion that Judge Brown’s acts did not rise to the level of moral turpitude.
 

 (6) The presence or absence of mitigating or aggravating circumstances.
 

 ¶ 32. The record reveals that today’s complaints represent the first time Judge Brown has been charged with judicial misconduct. However, inasmuch as Judge Brown conducted himself with a “gross unconcern for his conduct,” this Court agrees with the Commission that Judge Brown has displayed willful misconduct in office.
 
 See In re Quick,
 
 553 So.2d at 524. The misconduct which Judge Brown is accused of displaying in this case is similar to that of Judge R.R. in
 
 Mississippi Commission on Judicial Performance v. Justice Court Judge R.R.,
 
 732 So.2d 224, 230 (Miss.1999). The difference is that Judge Brown touched S.W. in a much more invasive manner than a touch on the shoulder, as was the case in
 
 R.R.
 

 ¶ 33. Furthermore, it is worth noting that the Commission found Judge Brown’s testimony not to be credible. Accordingly, this Court considers Judge Brown’s failure to be forthcoming in his testimony before the Committee and his failure to take personal responsibility for his actions as aggravating circumstances. More specifically, this Court notes that Judge Brown complained about S.W.’s work performance only after she filed a complaint with the Commission. Also, Judge Brown has made arguments before this Court and before the Committee at the hearing that S.W. was dressed provocatively on the morning of February 7. But this does not justify Judge Brown’s actions of misconduct as found by the Commission.
 

 ¶ 34. Accordingly, this Court adopts the recommendations for sanctions made by the Commission.
 

 CONCLUSION
 

 ¶ 35. Judge Brown’s actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brought the judicial office into disrepute. We thus order Judge Joe M. Brown to be publicly reprimanded; to be suspended from the office of justice court judge, District Two, Quitman County, for a period of thirty days, without pay; and to be assessed a fine of $1,500, plus costs of $1,955.20. The public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Quitman County in which a jury venire is present, with Judge Brown present and standing before the presiding judge, who shall read the public reprimand in open court.
 

 ¶ 36. QUITMAN COUNTY JUSTICE COURT JUDGE JOE M. BROWN SHALL BE PUBLICLY REPRIMANDED; SUSPENDED FROM THE OFFICE OF JUSTICE COURT JUDGE, DISTRICT TWO, QUITMAN COUNTY, FOR A PERIOD OF THIRTY (30) DAYS WITHOUT PAY; AND ASSESSED A FINE OF $1,500 PLUS COSTS OF $1,955.20. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE QUITMAN COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THIS DECISION BECOMES FINAL.
 

 WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.
 

 [1]
 

 . Based on the sensitive nature of the facts of this case, as depicted in the record, initials are being used to identify the victim, so as to not reveal her true identity.
 

 [2]
 

 . At this point, these facts basically represent S.W.’s version of what occurred. Since some of these facts are in dispute, Judge Brown's version of the facts are set out,
 
 infra.
 

 [3]
 

 . According to S.W., this "filing cabinet incident” was the unreported previous incident involving inappropriate conduct by Judge Brown.
 

 [4]
 

 . By way of a complete procedural history of this case, after the initial filing of the formal complaint by the Commission, an Agreed Statement of Facts and Proposed Recommendation was prepared and filed by and through counsel for both the Commission and Judge Brown, on February 12, 2009. The Agreed Statement of Facts and Proposed Recommendation was signed by counsel for the Commission, Luther T. Brantley, III; by Judge Brown, and by Judge Brown's attorney, Thomas A. Womble, with Womble also making a handwritten notation: "Approved As To Statement of Facts, With Dissent As To Sanctions.” At the regular Commission meeting on February 13, 2009, the Agreed Statement of Facts and Proposed Recommendations was submitted to and accepted by the Commission. On February 24, 2009, the Commission filed its Findings of Fact, Conclusions of Law, and Recommendation with this Court. On or about April 9, 2009, the Commission and Judge Brown filed a Joint Motion for Approval of Recommendations and a Memorandum Brief in Support of Joint Motion for Approval of Recommendations. On August 20, 2009, this Court entered an en banc order remanding this matter back to the Commission for further factual development based on “an insufficient factual basis before [the Court] to determine whether the recommended sanctions, or any sanctions at all, [were] appropriate."