KITCHENS, Justice,
dissenting:
¶ 87. In the present posture of this case, and given the turning point in the evolution of this Court’s approach to judicial performance cases at which we now find ourselves, I believe that the fairest and most prudent thing for us to do is to remand this matter to the Commission for a full-blown hearing, without regard to the Agreed Statement of Facts and Proposed Recommendations with which we have been presented.
¶ 38. Judge Dearman and her lawyer may well have relied upon this Court’s multitudinous published decisions in which we have represented to litigants and to the public that we conduct de novo reviews of the cases that come to us from the Mississippi Commission on Judicial Performance. See e.g., Miss. Comm’n on Judicial Performance v. Brown, 37 So.3d 14, 19 (Miss.2010) (citing Miss. Comm’n on Judicial Performance v. Vess, 10 So.3d 486, 489 (Miss.2009)); Miss. Comm’n on Judicial Performance v. Bradford, 18 So.3d 251, 253 (Miss.2009) (citing Miss. Comm’n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993)). Such a reliance is evidenced by Judge Dearman’s attempt, in her brief to this Court, to explain and, in some instances, seemingly to deny and defend against, accusations to which she had admitted in the Agreed Statement of Facts and Proposed Recommendations. Even though, as the majority opinion correctly observes, these portions of her brief are altogether extraneous and are, in fact, procedurally barred in the face of her admissions, she and her attorney very well may have believed, albeit mistakenly, that in the context of an expected de novo review by the Supreme Court, she appropriately could continue to defend herself, much as an appellant from a justice court conviction could do in a de novo trial in county or circuit court.[1]
*122 ¶ 39. Before Judge Dearman’s case could finally be resolved by this Court, a change of major proportions occurred in our approach to judicial performances cases, as explained in detail in our unanimous decision in Mississippi Commission on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011), in which we revert to a process this Court adopted in the early days of judicial performance jurisprudence in Mississippi, as explained in In re Removal of Anderson, 412 So.2d 743, 746 (Miss.1982). As quoted in Boone, Anderson provided that:
Therefore, it appears we are required to be a factfinding body, at least to some degree, in every case of this nature.
[[Image here]]
The power to impose sanctions is delegated solely to this Court; it therefore follows we have an obligation to conduct an independent inquiry of the record in order to make our final determination of the appropriate action to be taken in each case. In so doing, we will accord careful consideration the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.
In re Anderson, 412 So.2d at 746.
¶40. What remains unclear is what consideration, if any, we give to findings of fact and recommended sanctions reached by agreement. Compare Miss. Comm’n on Judicial Performance v. Williams, 880 So.2d 343, 347 (Miss.2004) (“Although there are unanswered questions regarding the mitigating facts in this case, we accept the recommendation before us, because it comes to us as an agreed recommendation.”) with Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 217-18 (Miss.2006) (holding that a joint recommendation is “akin to a criminal defendant entering into a plea agreement with the prosecution, whereby the defendant agrees to plead guilty to the offense in return for the prosecution’s promise of a specific recommended sentence to the judge for consideration”). Even though our rules do not contemplate judicial performance cases’ reaching this Court via agreed statements of facts and proposed recommendations, such is not prohibited, and seemingly it is a reasonable and appropriate mechanism that facilitates the efficient and timely resolution of cases. But no evidence is adduced and no record is made in the absence of a hearing, which presents a significant impediment to this Court’s exercise of its constitutional duties as the sole decider of judicial performance cases. We are hard pressed to assess the appropriateness of proposed recommendations for ultimate resolution of these important cases when we have been provided scant information concerning the facts that gave rise to the accusations against a judge.
¶41. This is true with regard to the accusations against Judge Dearman in the present case. With most of the instances of alleged judicial conduct of which she is accused, there are unanswered questions which appear to have great importance, and which, if answered in one way would validate or legitimatize her conduct, but, if answered in some other way, might result in a finding of egregious misconduct.
¶ 42. For example, in the case of Phil-ipe D. White, the judge set the defendant’s bail at $2,500 and imposed as a condition that White attend church at least once *123 weekly.[2] In light of our decision in Mississippi Commission on Judicial Performance v. Martin, 921 So.2d 1258, 1263 (Miss.2005), the imposition of an invalid condition of bail may have been nothing more than a judicial error, i.e., an incorrect legal interpretation, and Martin is clear authority for the bedrock proposition that we do not sanction judges for erroneously interpreting the law.
¶ 43. We are told that, two months after White’s bail bond was set and he apparently had posted bail, a probation officer reported to Judge Dearman that White had violated the terms of his release. Judge Dearman may have exercised her discretion properly, and it is quite possible that she correctly followed the appropriate procedures in ordering White’s arrest. We simply cannot determine this, one way or the other, from the limited facts before us. We are informed that she issued a mittimus “ordering that White be arrested and allowed no bond.” It is impossible for us to discern what this means; a mittimus is a document whereby a judge orders an accused person detained, usually to await grand jury action on a felony charge. See Miss.Code Ann. §§ 99-5-31 (“Mittimus in bailable cases to fix the bail”); 99-25-7 (“Mittimus where bail is denied”); 99-25-9 (“Mittimus where bail is allowed and not given”) (Rev.2007). At the point at which she issued a mittimus, the judge seems to have set White’s bail at $50,000. We have no earthly way of knowing whether there was anything wrong with her having done that.
¶ 44. Next, we are told that White waived a preliminary hearing. We do not know whether it was on the initial charge, or on some other charge. When White waived the preliminary hearing, we are told, “Judge Dearman ordered White released on $2,500 bond on the same conditions.” While experience tells us it is more likely that the judge set White’s bail at $2,500, then someone posted the bail and he was released, rather than the judge’s ordering him released, it is not possible to read the few facts we are provided and ascertain what, if anything, the judge did wrong. We are informed that, a week later, the grand jury indicted White. For what crime he was indicted is not revealed to us, or whether there were other charges still pending against him before Judge Dearman, or whether new charges were brought against him in the justice court. We are told only that in November 2006, White violated his release terms and that Judge Dearman again ordered him arrested and allowed no bond. In short, the information before us is unfathomably vague and hopelessly confusing, so much so that, in its present posture, the portion of Judge Dearman’s case that relates to her judicial interaction with Philipe D. White defies intelligent adjudication by this Court.
¶ 45. Without attempting, at this point, laboriously to analyze and make sense of the superficial, greatly abbreviated factual recitations that pertain to the other litigants mentioned in the majority opinion, it is sufficient to say that none of them— through no fault of the author of that opinion — provides adequate detail for us to discern whether Judge Dearman has violated applicable judicial canons, and, if so, to what extent. The record before us is woefully deficient in that regard. Thus, if this judge has committed indiscretions or *124 infractions that rise to the level of judicial misconduct, we are in no position to determine appropriate sanctions.
¶ 46. Finally, I respectfully disagree that Judge Dearman’s writings are clear evidence of any bias or that they amount to an invitation to ex parte communications. Notably, the majority opinion does not determine whether they demonstrate a partiality toward criminal defendants or the prosecuting authorities. Maj. Op. at ¶ 27. The most that can be said is that Judge Dearman could have been expressing her understanding that “[ejxcessive bail shall not be required.” U.S. Const. amend. VIII; Miss. Const. art. 3, § 29. Moreover, Judge Dearman maintains that she was not inviting the public to comment on a particular matter, but rather, she was seeking input about the general administration of justice. See Miss.Code of Judicial Conduct Canon 3(B)(9) (“This Section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.”). This is not so different from a circuit judge’s discussing judicial proceedings with a jury after a verdict has been rendered. In my opinion, to sanction Judge Dearman for her writings would amount to an unconstitutional infringement of her right to free speech. Miss. Comm’n on Judicial Performance v. Wilkerson, 876 So.2d 1006, 1010 (Miss.2004) (“[Tjhis Court clearly may not impose sanctions for violation of a Canon where doing so would infringe on rights guaranteed under the First Amendment, including the freedom of speech.”). Because the remainder of the vague allegations are unsupported by facts sufficient to determine to what extent Judge Dearman engaged in misconduct, if at all, I would remand the case to the Commission for further proceedings. See Brown, 37 So.3d at 18 n. 4 (noting that we had remanded a judicial performance matter to the Commission for further factual development when the record presented “an insufficient factual basis before the Court to determine whether the recommended sanctions, or any sanctions at all, were appropriate”).

. In her response to the Commission’s motion to strike, Judge Dearman says:
It should be noted that Respondent has agreed that her actions constituted misconduct, but she also feels she [is] entitled to a[n] independent review of these issues by [the] Mississippi Supreme Court. She could have chose[n] to raise a number of *122 these issues set forth in her brief at a hearing before the Commission, but doing so would have likely cost her thousand[s] of dollars in her own attorney’s fees, plus paying those incurred by the Commission. As such, Respondent elected [to] raise some of these mitigating factors and issuefe] in her Brief to this Court.

. While judges have no authority to require church attendance, Rule 3.04 of Mississippi’s Uniform Rules of Procedure for Justice Court does say that the justice court judge has the authority "to require a certain type of bond.” The rule provides no explanation of what this means, and this language could mislead a nonlawyer justice court judge to believe she had authority to craft any sort of bond she pleased.