KITCHENS, Justice,
dissenting:
¶ 43. While I agree that the conduct described in Counts Two and Four warrants sanctions, I cannot, with any confidence, agree that Counts One, Three, Five, and Six provide sufficient and clear facts that would enable this Court to make “a final determination of the appropriate ac *96 tion to be taken” based on “an independent inquiry of the record.” Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011) (quoting In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743, 746 (Miss.1982)). In the present case, this Court’s only source of factual information is the agreed statement of facts from the Commission and Judge Thompson. And, when the agreed statement of facts has not clearly articulated misconduct, this Court has taken two different courses of action: (1) remanding the case to the Commission for further factual development (Mississippi Commission on Judicial Performance v. Brown, 37 So.3d 14, 18 n. 4 (Miss.2010)); or (2) dismissing the charges with prejudice (Mississippi Commission on Judicial Performance v. McGee, 71 So.3d 578 (Miss.2011)). Based on the ambiguity in four of the six counts, I would remand the case to the Commission for further development.

Count One

¶ 44. As to Count One, it is unclear from the agreed facts which of Judge Thompson’s actions violated the Mississippi Code of Judicial Conduct; but the majority finds Judge Thompson’s supposed communication with the sheriffs office amounted to “involving] himself in a criminal investigation at a time when there was no case pending before him involving the matter.” Maj. Op. ¶ 6. However, the quoted language comes from the brief filed by the Commission, which was not signed by Judge Thompson or his counsel. In addition, Thompson does not admit in the agreed facts that he actually did communicate with the sheriffs office, rather, he simply acknowledges that “Rogers received a letter from the Sheriff of Lee County, Mississippi advising him that Respondent instructed his office to take no action, as the matter was a civil matter.”
¶ 45. Even if Judge Thompson did communicate with the sheriffs office, the record before us does not establish that a criminal “investigation” or “case” even existed. We are not told whether the sheriffs office thought an investigation of Rogers’s claim was warranted, and there is nothing in the agreed facts to tell us that the sheriffs office even suspected that a crime had been committed. Rogers apparently was attempting to have the owner of the land charged with theft of livestock, a felony under Mississippi Code Section 97-17-53 (Rev. 2006); thus, Judge Thompson’s “refusing] to allow” Rogers to file a criminal affidavit would not have precluded the State from proceeding with an investigation and, possibly, with an indictment. See Miss.Code Ann. § 99-33-1(2) (Rev. 2007) (granting justice courts jurisdiction, concurrent with circuit courts, over misdemeanor criminal charges).
¶ 46. Notably, the matter ultimately was handled through a civil action, and the agreed facts do not reveal that the State ever attempted to pursue a criminal indictment. Therefore, it does not appear that Judge Thompson made a “mistake of law” in “advising Rogers that the case was a civil case.” Maj. Op. ¶ 5. Indeed, judges are constitutionally 'prohibited from issuing arrest warrants in the absence of a belief that probable cause exists. U.S. Const, amend. IV; Miss. Const, art. 3, § 23. Thus, the agreed facts indicate that Judge Thompson was simply performing his constitutional duty by “advising Rogers that the case was a civil case” in which a criminal charge would not have been appropriate.[1]
*97 ¶47. Without any information regarding the alleged communication between Judge Thompson and the sheriff, or whether there was in fact an ongoing criminal investigation, Count One does not set forth any sanctionable conduct. This Court’s sanctioning Judge Thompson for a “communication with the [sjheriff s office,” sets a dangerous precedent, for there often are legitimate, necessary ex parte communications between justice court judges and law enforcement officials (e.g., concerning arrest warrants, search warrants, setting of bail). Our justice court judges frequently are in contact with law enforcement officials, more so than the judges of any other court, and sanctioning Judge Thompson for nothing more than a “communication” with the sheriffs department could produce counterproductive results at the grassroots level of our state’s criminal justice system. This Court should recognize that there is a difference between impermissible ex parte communications with judges concerning their adjudication of cases and the necessary, legitimate interaction that must occur between them and other functionaries in the system.

Count Three

¶ 48. In discussing Count Three, the majority distinguishes Judge Thompson’s actions from those addressed in two recent cases, McGee, 71 So.3d 578, and Mississippi Commission on Judicial Performance v. Little, 72 So.3d 501 (Miss.2011), by explaining that Judge Thompson engaged in ex parte communication with the parties, gave no notice to prosecuting authorities, and that he interfered with a case assigned to another judge. I do not find the agreed facts to be so clear. We are told that “Respondent had previously nonadjudicat-ed the minor,” but we are not told whether the nonadjudication was for the July 21, 2008, DUI charge or for some other infraction. We also are told that the DUI case was originally assigned to another justice court judge, but it is not clear whether the case was still assigned to another judge when Judge Thompson nonadjudicated the charge. Next, we are told that “[wjhen the officer came into the clerk’s office to inspect the file prior to court, it was discovered that Respondent had previously nonadjudicated the minor.... ” This suggests that no notice was given to the prosecuting authorities; but, similarly, this is not entirely clear from the facts presented to us. Finally, Judge Thompson nonadju-dicated the charge “at the request of Galloway and her father.” This implies that an improper ex parte communication took place, but the request may also have been in the form of a properly noticed motion. There simply are too many gaps in the agreed facts to warrant sanctions; this Court has not been provided a sufficiently clear and complete statement of the relevant facts and circumstances.[2]

*98
Count Five

¶ 49. The agreed facts in Count Five say that the defendants “supplied proof of insurance obtained after the fact.” Unlike the majority, I decline to speculate whether “obtained after the fact” refers to the proof of insurance document or to insurance coverage itself. If the proof of insurance was obtained after the citation, but coverage existed when the citation was issued, Judge Thompson was correct to dismiss the cases.[3] Miss.Code Ann. § 63-15-4(5) (Rev. 2007).
¶ 50. Yet, even if insurance coverage was obtained after the citation was issued, there is nothing to indicate that Judge Thompson’s dismissing the cases was anything more than a mistake of law on his part. The majority imputes knowledge to Judge Thompson based on eleven instances over a four-month period. Maj. Op. ¶ 6. But, repeating a mistake would not make the conduct willful unless and until Judge Thompson had been disabused of his misunderstanding. A person — even a judge— can repeat the same mistake an infinite number of times without knowing it to be a mistake. Again, the agreed facts, as written, do not describe sanctionable misconduct.

Count Six

¶ 51. As to Count Six, the majority finds that Judge Thompson “interjected himself into [a] separate civil matter[ ] ... when no case was pending before him ... by advising a divorce litigant.” Maj. Op. ¶ 23. But, the facts do not clearly disclose that a filed matter actually was pending in the chancery court. We are told only that a male person was “involved in a divorce” and that “[t]he officer was advised by his dispatcher that any order concerning the matter must come from the Chancery Court judge.” On the other hand, the parties were before Judge Thompson on “a family disturbance matter.” Given the generic description of the type of case before Judge Thompson, and given that it is not apparent whether a matter had been filed and was then an active case in chancery court, I cannot say with confidence that Judge Thompson “improperly involved himself in a domestic civil matter ... when there was no case pending before him.” Maj. Op. ¶¶ 18, 23.
¶ 52. The facts do suggest that there may have been an improper ex parte communication with the man involved, and that Judge Thompson may have attempted, improperly, to aid the litigant by personally telephoning the officer; but, once again, the agreed facts are ambiguous. Despite the majority’s finding to the contrary, Judge Thompson did not admit in the agreed facts that he had “advis[ed] a divorce litigant.” Maj. Op. ¶ 23. Moreover, there are numerous scenarios in which a justice court judge legitimately can be involved in domestic matters pending in *99 chancery court, such as those arising under our statutes on domestic violence, burglary, assault, kidnapping, child neglect, murder, and others.

Duty to Report Attorney Misconduct

¶ 53. Finally, although I agree that Counts Two and Four provide a sufficient factual basis for sanctions against Judge Thompson, our ruling should not be limited to the judge. In both situations, members of the Mississippi Bar played active roles in the misconduct. Our Rules of Professional Conduct tell us that, “[i]t is professional misconduct for a lawyer to ... knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.” Miss. R. of Profl Conduct 8.4(f). In addition,
A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer’s honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.
Miss. R. of Profl Conduct 8.3(a). In the present case, Counts Two and Four involved lawyers’ asking a nonlawyer judge to engage in conduct that this Court has adjudicated sanctionable. Thus, as a matter of law, these lawyers seem to have violated Rule 8.4(f), and as members of the Bar, we justices are duty-bound to report this apparent professional misconduct. Miss. R. of Profl Conduct 8.3.
¶ 54. Moreover, at least five members of the Mississippi Commission on Judicial Performance also are lawyers, and, it follows that they too are required to report lawyers’ misconduct. Miss. Const, art. 6, § 177A. While a report may have occurred, we are not informed whether the Bar has been notified of the Commission’s findings in the present case. In future judicial performance matters, where it is apparent that attorneys have actively participated in the alleged misconduct, the Commission should take steps to “inform the appropriate professional authority,” and also should notify this Court whether such report has been made.

Conclusion

¶ 55. In criminal cases, resolved by agreement between the prosecution and the defendant, the trial judge must confirm that there is, indeed, a factual basis for a guilty plea. URCCC 8.04 A(3). Likewise, before meting out sanctions in a judicial performance matter, this Court must be assured that the agreed facts set forth a distinct basis for sanctions warranted by clear violations of Mississippi’s Code of Judicial Conduct. Because misconduct is apparent in only two of the six counts, I would remand the case to the Commission for further development.

. A strained reading of the agreed facts may suggest that Judge Thompson violated Mississippi Code Section 99-33-2(3), which criminalizes a justice court judge's failure to forward criminal affidavits and other supporting documents to the court clerk. Yet, nothing in *97 the record indicates that the Commission thought a violation of this statute had occurred.

. The Commission found that Judge Thompson had "non-adjudicated the minor in violation of the provisions of Mississippi Code [Section] 63-11-30(3).” But, as in McGee, 71 So.3d 578, and Little, 72 So.3d 501, Judge Thompson's disposition of the case may have been based on a good faith interpretation of the law, especially given the confusing language of the statutes in question. Mississippi Code Section 63-11-30(3) is referred to as the "Zero Tolerance for Minors” law, but it does not apply if the accused's blood alcohol content (BAC) is more than .08%. Because Galloway's BAC was .09%, subsection (2) would apply. The "Zero Tolerance for Minors” law allows for nonadjudication of a charge, but subsection (2) is silent on that subject. Thus, Mississippi Code Section 63-11-30 does not prohibit a judge's nonadjudicating a minor charged with driving under the influence with a BAC of more than .08%.
Mississippi Code Section 99-15-26, which permits dismissal of certain criminal charges upon the accused’s completion of conditions *98 imposed by the court, does not apply to any charge "under the Mississippi Implied Consent Law.” Miss.Code Ann. § 99 — 15—26(l)(c) (Rev. 2007). However, the procedure contemplated by Section 99-15-26 is not the same as the nonadjudication alternative described in the "Zero Tolerance for Minors” law. Indeed, Section 99-15-26 does not use the term nonadjudication. But see McGee, 71 So.3d at 585 (noting that Mississippi Code Section 99-15-26(l)(c) (Supp.2010) prohibits the nonadjudication of charges under the Mississippi Implied Consent Law).

. The Commission's brief alleges that the "defendants were issued citations for having no insurance and they later acquired insurance.” Judge Thompson did not sign the brief, and we do not consider facts outside the agreed statement of facts. Miss. Comm'n on Judicial Performance v. Dearman, 66 So.3d 112, 115 (Miss.2011) ("Although Judge Dearman is allowed to submit a brief, this Court will not consider exhibits or factual allegations and assertions that were not presented below.”) (citing M.C.J.P. Rule 10D)).